Filed 4/1/14  Modified and certified for publication 4/30/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.B., a Person Coming Under the Juvenile Court of Law. | B249402 |
| ———————————————— | (Los Angeles County Super. Ct. No. CK96106) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| DOMINIQUE B., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mark A. Borenstein, Judge.  Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

————————————————

Dominique B. (mother) appeals from the juvenile court's judgments and orders declaring her daughter, A.B., a dependent of the court per Welfare and Institutions Code section 300, subdivision (b)[1] under two petitions. She contends we must reverse the jurisdictional finding under the original petition because she was denied due process. We decline to address this issue because substantial evidence supports jurisdiction under the subsequent petition. Mother also contends the juvenile court abused its discretion in denying her request for a continuance of the jurisdictional hearing on the subsequent petition. We affirm.

### Statement of Facts

Two-year-old A.B. is the daughter of mother and Matthew D. (father).[2] Mother and father are married but father recently filed for divorce. Prior to DCFS's involvement, father had only seen A.B. twice since her birth.

On October 15, 2012, DCFS received a referral that A.B. was developmentally delayed, appeared unhealthy, and was primarily cared for by her maternal grandmother Maria B. (maternal grandmother), who appeared to have mental health issues. An emergency response social worker immediately investigated but could not locate A.B. The social worker spoke with mother, who denied the allegations and refused to cooperate with DCFS. The next day, the social worker contacted father and learned that A.B. could not yet walk and was behind on her immunizations. The social worker also gained access to mother's apartment, which was cluttered with thirty boxes filled with paper and trash. A mattress and a mattress pad were on the floor, but no baby crib or any other furniture was found in the apartment.

The next day, mother filed a police report indicating maternal grandmother had abducted A.B. Two days later, mother informed police that maternal grandmother and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] Father is not a party to this appeal.

A.B. had returned, but police were unable to locate A.B. to verify she had been returned home.

Despite being unable to locate A.B., DCFS filed a juvenile dependency petition on October 23, 2012, alleging mother's unsafe and cluttered apartment and father's failure to protect A.B. from the apartment's hazards endangered A.B.'s physical health and safety and put her at risk of physical harm (count b-1). At the detention hearing, the juvenile court found there was a prima facie showing of jurisdiction under section 300, subdivision (b) and a prima facie case for detaining A.B. The juvenile court ordered mediation to take place on December 18, 2012.

DCFS mailed notice of the mediation to mother at the wrong address. Neither mother nor father attended the mediation on December 18, 2012. The juvenile court proceeded to adjudicate the petition over mother's counsel's objection, finding by a preponderance of evidence that count b-1 was true and declaring A.B. a dependent of the court.

Nine days later, on December 27, 2012, University of Kentucky police officers found A.B. with maternal grandmother, who was wandering around outside on the university's Lexington campus. The temperature was below freezing and it was windy, but A.B. had no pants, shirt, shoes, sweater, jacket or gloves. A.B. was examined by a doctor in Kentucky, who determined she met the criteria for Failure to Thrive based on her low weight and delayed physical development. Kentucky police discovered mother had wired money to maternal grandmother multiple times while A.B. was purportedly missing.

A.B. was returned to California and placed in foster care. Her weight was below the fifth percentile for her age, and her body mass index was only sixteen percent. She was developmentally delayed and could not yet walk or talk due to social deprivation. She also suffered from decreased muscle tone, most likely due to lack of physical activity. While detained, she gained weight and her body mass index increased to thirty-one percent.

3

On January 14, 2013, DCFS filed a subsequent petition under section 342, alleging mother placed A.B. in danger by allowing maternal grandmother to care for her (count b-2) and placed A.B. at risk of severe physical and emotional harm by failing to properly feed and care for her (count b-3). Prior to the adjudication hearing on the petition, mother's counsel filed a motion for reconsideration of the jurisdictional finding under the original petition and a motion for a continuance to obtain responses to outstanding subpoenas for documents from Kentucky police and to perform further discovery.

The contested adjudication hearing on the subsequent petition was held on April 10, 2013. Mother was out of the country and did not attend.

On the day of the hearing, DCFS filed an interim review report and a multidisciplinary assessment team report (MAT assessment), containing findings from A.B.'s development assessments, information from interviews with father and A.B.'s foster mother, and DCFS's recommendations. At the hearing, the juvenile court overruled mother's counsel's objections to admission of the MAT assessment.

The juvenile court denied mother's motion for reconsideration of the original petition and her motion for a continuance, finding there was no good reason to delay the adjudication. The court found the evidence established A.B. was underfed and undernourished while under mother's care. The court dismissed count b-2 but found by a preponderance of evidence that count b-3 was true and ordered that A.B. remain a dependent of the court. The court removed A.B. from mother's custody, placed her with father, and awarded mother monitored visits. The court ordered mother to participate in a parenting program and individual counseling and to submit to a psychological assessment if recommended by her counselor. Mother timely appealed.

**Discussion**

**1.    Any error in finding jurisdiction under the original petition is moot because substantial evidence supports jurisdiction under the subsequent petition.**

Jurisdiction under section 300, subdivision (b) is appropriate where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to

4

adequately supervise or protect the child . . . ." (§ 300, subd. (b).) At a jurisdictional hearing, a juvenile court must base its findings on a preponderance of evidence. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1432.) "On appeal, the 'substantial evidence' test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citation.] The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value. [Citation.]" (*Id.* at p. 1433.) "In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason. [Citation.]" (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)

Mother asks that we reverse the juvenile court's finding of jurisdiction under the original petition because she was not properly noticed and because A.B.'s whereabouts were unknown when the jurisdictional finding was made. DCFS concedes the jurisdictional finding under the original petition was error but argues it was rendered moot by the juvenile court's finding of jurisdiction under the subsequent petition. We agree.

"When no effective relief can be granted, an appeal is moot and will be dismissed." (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315.) "On a case-by-case basis, the reviewing court decides whether subsequent events in a dependency case have rendered the appeal moot and whether its decision would affect the outcome of the case in a subsequent proceeding." (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1055.)

In dependency proceedings, the basic pleading device to assert a child falls within the juvenile court's jurisdiction is a petition. (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1035.) "It may be an original petition (§ 332), a subsequent petition for children who are already dependents when there are 'new facts or circumstances' that bring them within a category of section 300 'other than those under which the original petition was sustained' (§ 342), or a supplemental petition when there are facts which indicate that a previous disposition is not appropriate. (§ 387.)" (*Ibid.*)

5

Here, no effective relief would be provided to mother by reversing jurisdiction under the original petition because jurisdiction was established independently under the subsequent petition on entirely new and independent facts. "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition." (§ 342.) All procedures and hearings required for an original petition are required for a subsequent petition and are conducted under the same rules. (§ 342; Cal. Rules of Court, rules 5.560, subd. (b), 5.565, subd. (e).) Thus, so long as the jurisdictional finding under the subsequent petition is supported by substantial evidence, reversal of the jurisdictional finding under the original petition would be futile.

Substantial evidence supports the juvenile court's finding that mother's failure to properly feed A.B. placed her at risk of severe physical and emotional harm. A.B. met the criteria for Failure to Thrive, her weight was below the fifth percentile for children her age, and her body mass index was just sixteen percent. Her ability to walk and talk was developmentally delayed due to lack of opportunity to engage in those activities, and she was diagnosed with decreased muscle tone due to lack of physical activity. In only a short time after being detained, she gained weight and her body mass index increased to thirty-one percent. The court could reasonably conclude from A.B.'s poor health not only that she was undernourished and neglected while in mother's care but also that mother's failure to properly feed her placed her at risk of serious physical harm.

Mother argues reversal of the original petition will provide effective relief because had the original petition not been sustained, the subsequent petition would have been scrutinized in a much different light. (See *In re Dylan T.* (1998) 65 Cal.App.4th 765, 769 ["An issue is not moot if the purported error infects the outcome of subsequent proceedings"].) We disagree. The juvenile court found by a preponderance of evidence that A.B. was underfed and undernourished while in mother's care based on A.B's health evaluations after she was found. Because the juvenile court relied exclusively on new facts and circumstances developed after A.B. was found, the original jurisdictional

6

finding did not affect the subsequent finding. The finding of jurisdiction under the original petition is therefore moot.

**2.      The juvenile court's denial of mother's continuance request is not grounds for reversal.**

Six days prior to the subsequent jurisdictional and dispositional hearing, mother's counsel requested a continuance based on outstanding subpoena requests for documents from the Kentucky police and the need to perform further discovery. At the hearing, mother's counsel also asked for a continuance because mother was out of the country and unable to appear. The juvenile court denied the request.

On appeal, mother argues the juvenile court abused its discretion in denying her request for a continuance to address the information in the MAT assessment filed on the day of the hearing. Mother contends she should have been granted a continuance to show A.B's poor health was caused exclusively between October 2012 and December 2012, when she had disappeared with maternal grandmother. Mother argues her due process rights were violated by the juvenile court's denial of her continuance request because she was denied the opportunity to prepare a defense to the MAT assessment and subpoena the persons responsible for the information therein. In support of this argument, mother cites to portions of the record in which her counsel objected to admission of the MAT assessment.[3]

Under section 352, a continuance of any juvenile court hearing shall be granted only upon a showing of good cause, and shall not be granted if contrary to the minor's best interests. In considering the minor's interests, "the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a).) At a jurisdictional hearing, the juvenile court

---

[3] Mother's counsel objected to admission of the MAT assessment as hearsay under section 355 and stated, "It's so many layers of hearsay, and . . . I get it today and I don't have an opportunity to question anyone or bring anyone in or cross-examine anyone in regards to any information that's contained in this MAT assessment."

7

has discretion to grant a continuance if a report is not provided to the parties within a reasonable time before the hearing.  (§ 355, subd. (b)(3).)

Nothing in the record indicates mother's counsel requested a continuance based on the filing of the interim review report or the MAT assessment on the day of the hearing.  Although mother's counsel objected to the admission of the MAT assessment on hearsay grounds, at no point during the discussion did counsel request a continuance to prepare a defense to the MAT assessment or to subpoena and examine any declarants therein.  Any discussion of a continuance request during the hearing focused solely on mother's absence and the outstanding subpoena request to Kentucky police.  Because mother's counsel never requested a continuance to address the MAT assessment, we consider the argument forfeited.  (See *In re Richard K.* (1994) 25 Cal.App.4th 580, 590 ["As a general rule, a party is precluded from urging on appeal any point not raised in the trial court"]; *In re Cheryl E.* (1984) 161 Cal.App.3d 587, 603 ["A party on appeal cannot successfully complain because the trial court failed to do something which it was not asked to do"].)

Even if we were to consider mother's claim, we would reject it.  We will reverse an order denying a continuance only upon a showing of abuse of discretion.  (*In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1187.)  A juvenile court abuses its discretion if its decision is arbitrary, capricious or patently absurd.  (*In re Tamneisha S.* (1997) 58 Cal.App.4th 798, 806.)  The doctors' findings on A.B's poor health were first provided in a jurisdiction/disposition report on February 15, 2013.  Between February and April 2013, mother's counsel had ample time to determine whether A.B.'s poor health could have occurred solely within the time she was out of mother's care and had no need to consult Kentucky police or physicians to make such a determination.  The juvenile court was therefore well within its discretion to deny mother's request for a continuance.

**Disposition**

The judgment and orders are affirmed.

CHANEY, J.

We concur:

ROTHSCHILD, Acting P. J.

MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 4/30/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.B., a Person Coming Under the Juvenile Court of Law. | B249402 |
| | (Los Angeles County Super. Ct. No. CK96106) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION |
| v. | |
| D.B., | [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on April 1, 2014, be modified as follows:

1. Defendant and Appellant's name is changed to D.B. in the case caption and on page 2, paragraph 1, line 1.

The opinion was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in judgment.

_____

CHANEY, Acting P. J.                                             MILLER, J.*

_____

    * Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.