Filed 3/30/15  In re C.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

| | |
|---|---|
| In re C.B., a Person Coming Under the Juvenile Court Law. | C071981 |
| AMADOR COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. 11-DP-0399) |
| Plaintiff and Respondent, | |
| v. | |
| CHRISTOPHER D., | |
| Defendant and Appellant. | |

This is the second appeal of Christopher D. (father) challenging the juvenile court's jurisdictional findings with regard to his son C.B.  In our prior nonpublished opinion, *In re C.B.* (Mar. 12, 2013, C070741), review denied June 12, 2013, we affirmed the juvenile court's jurisdictional order, which found that the minor was at risk of harm as a result of father's inability to provide regular care for the minor due to his mental illness, developmental disability, or substance abuse.  While that appeal was pending, the Amador County Health and Human Services Agency (Agency) filed a subsequent

1

petition pursuant to Welfare and Institutions Code section 342,[1] alleging the minor was at risk of suffering emotional damage due to father's instability, conduct, and lack of insight. Father now appeals from the jurisdiction and termination of dependency orders entered after hearing on the subsequent petition. He contends that the jurisdictional findings were not supported by substantial evidence. He also argues that the visitation order does not comport with the juvenile court's oral order. We shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Prior to October 2011, father had custody of his seven-year-old son on weekends; he was scheduled to pick the minor up from school on Fridays and bring him back to school on Mondays. On December 1, 2011, however, weekend visitation was suspended by the family law court, after mother filed a declaration seeking reduction in visitation and requesting visitation be conditioned upon father's participation in a rehabilitation program.

Mother's declaration stated that father had participated in a 30-day rehabilitation program in March 2010, but had returned to alcohol use immediately thereafter. Father admitted he continued to drink, and the minor also reported father was drinking, despite the court order that father not consume alcohol 12 hours prior to or during visitation. The minor also reported that, in April 2011, father had vomited from drinking too much and the dog ate the vomit and got drunk. The minor also stated that he and father were fishing and there was lots of beer.

Father had been missing an average of one visit per month, and had been picking the minor up a day late or returning him a day early. The minor frequently ended up spending the night with his aunt, instead of father.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

The minor returned from visits not having bathed, or brushed his teeth, and hungry. He would spend a day overeating after returning to mother, although father claimed he had offered the child food. Mother also stated the minor would return from visits with bug bites on his back and blisters on his feet from not wearing shoes. The minor told mother in April 2011 that he and father had slept in the car.

On October 15, 2010, father brought the minor to the maternal grandmother's house, reporting that the minor did not want to stay with him. Father told the maternal grandmother that his drinking had been getting worse and he felt he was unfit as a parent, as "broken" people cannot make good parents. Mother's declaration further recounted father's talk of suicide.

Finally, mother's declaration described an incident wherein the minor reported father had gotten very angry when his dog defecated on the couch. According to the minor, father put the dog's head in the pile of feces while beating the dog, then put the dog's head in the toilet and flushed it. He then put the dog in the toilet, closed the lid, and sat on the lid while the dog screamed. When mother confronted father about the incident, he laughed.

On November 30, 2011, the Agency filed a section 300 petition on behalf of the then eight-year-old minor to remove him from father's custody. The petition, as subsequently amended, alleged the minor came within section 300, subdivisions (b) (failure to protect), (c) (serious emotional damage), and (i) (cruelty). Specifically, it alleged, under subdivision (b), that the minor has suffered, or there is substantial risk he will suffer, serious physical harm or illness, by the inability of the parent to provide regular care for the child due to the parent's mental illness, developmental disability, or substance abuse. In support of this allegation, it was alleged that, on November 29, 2011, father admitted he is an alcoholic and that he has continued to consume alcohol in the presence of the minor, despite being prohibited by a family court order from doing so.

Mother reported that the reason for the family court order was her previous report that in the past father had driven under the influence of alcohol with the minor in the car.

Under section 300, subdivision (c), the petition alleged the minor was suffering from serious emotional damage as a result of the parent's conduct. Mother reported the minor suffered from depression and anxiety, and had developed anger management issues after he witnessed the incident wherein father beat the dog and put it in the toilet. The minor has since had repeated angry outbursts and tantrums, that caused disciplinary problems at school. The petition also alleged that the minor has stated he does not feel safe in father's home. Additionally, it was alleged that father had reported he has suicidal thoughts several times a day, although he states he would not commit suicide "because that would be stupid." However, father, attempted suicide twice previously, as documented by the police department, and states he suffers from depression and posttraumatic stress disorder for which he is not receiving treatment.

Invoking section 300, subdivision (i), the petition alleged the minor had been subjected to acts of cruelty by the parent, and recounted the incident wherein father beat the dog and put it in the toilet. The minor had also reported that the dog had thereafter disappeared and father had told him the dog ran away. The minor appeared doubtful of father's explanation, stating the dog could barely walk. The petition also alleged that mother reported father had taken the minor for visitation and shot sheep for sport in Amador County in the minor's presence.

Mother's statements, from which the allegations in the petition arose, were included in the jurisdiction report. The social worker also spoke with the minor, who stated that he does not feel safe at father's house because father is always yelling. Father and his roommate drink beer when he is there. The minor became very serious and visibly upset when he recounted the incident involving the dog and the toilet.

Father told the social worker that the dog had an accident so he picked the dog up and held it over the toilet so it could defecate in the toilet. He then put the dog in the

4

shower. He denied putting the dog in the toilet and claimed the dog did, later, run away after his roommate left the doors and windows open. Father admitted he is an alcoholic but says he can control his drinking. Father also admitted he has had a drink in the minor's presence but said he does not get drunk while caring for the minor. He stated he gets drunk about three times a month. Father also reported he suffers from depression and posttraumatic stress disorder.

After a hearing, at which both mother and father testified, the juvenile court sustained the allegations in section 300, subdivisions (b) and (c), but dismissed the subdivision (i) allegations. With respect to the subdivision (i) allegations, the juvenile court remarked that it was possible the minor was traumatized by the dog's yelling and yapping, and by seeing father put the dog over the toilet--although the minor did say father sat on the lid to keep the dog from being able to get out of the toilet. The court then went on to say, "On the other hand, I don't know where he comes up with this sheep business, either. [¶] It's troubling. I think that I'm not going to find it to be true, but I find the way the whole thing was handled, again, to be extremely troubling."

At the January 26, 2012, disposition hearing, the juvenile court ordered the minor placed with mother. Father's case plan included a mental health assessment and psychological evaluation, a medication evaluation, weekly therapy, a parenting class, a substance abuse assessment, substance abuse testing, and supervised visits with the minor to occur twice a week for a total of four hours a week.

There were some significant problems with visitation. Over the course of nine months (commencing from the time the section 300 petition was filed), father visited the minor only 21 times. He canceled 11 visits, including three during the month of February 2012. Father did not visit the minor for most of March and April 2012 because the visits would be at his recovery center and, therefore, not recorded. And he refused to visit the minor from May 30 to July 12, 2012, because the visits were not at the park as he requested. Father also canceled his visits for the last two weeks of August 2012.

5

Father was constantly aggressive, argumentative, hostile, intimidating, and defensive with all staff involved. During visits, he regularly made negative remarks to the minor about minor's mother (and the social workers), causing the minor to either defend his mother or withdraw. On one occasion, father's behavior caused the minor to question whether father wanted to visit with him. On another occasion, the minor reported that the visit was terminated because father was "being scary" at the park. When asked by the social worker about visitation with his father generally, the minor became quiet and fidgety--pulling on and twisting his shirt, and squirming in his chair. He would not make eye contact and answered questions about the quality of his visits, and whether he enjoyed them or was worried about them, with "I don't know." The minor's therapist reported that the minor presents with a very flat depressive affect when he is questioned about father or visitation, and refuses to discuss the visits.

Father attended 30 days of inpatient substance abuse treatment but has refused to participate in outpatient services. He tested on only one occasion and the test was positive for alcohol and marijuana. Father did not complete his parenting class and did not regularly participate in his individual therapy. Although he participated in the court-ordered mental health evaluation, and was diagnosed with a personality disorder, he refused to be evaluated for medication.

The six-month review hearing was originally scheduled for July 12, 2012. The social worker's report recommended father's services be terminated and he be permitted only supervised visitation until he can demonstrate to a family law court that he has sought treatment to stabilize his mental health and addressed his alcohol and marijuana dependency issues. The matter was set for August 23, 2012, for a contested hearing.

On August 17, 2012, the Agency filed a subsequent petition under section 342, alleging the minor was suffering, or at risk of suffering, serious emotional damage within the provisions of section 300, subdivision (c) (serious emotional damage). The petition alleged the minor was at risk of serious emotional damage due to father's mental

6

instability, fragile sobriety, lack of insight into how his behaviors negatively impact the minor's mental stability and have caused the minor to be fearful of him, failure to accept responsibility for his behaviors, and father's untreated personality disorder.

After a combined six-month review/jurisdiction hearing, the juvenile court found the allegations in the subsequent section 342 petition true. The juvenile court expressed concern that the minor had deteriorated to the point of giving nonresponsive "I don't know" answers when asked about father and their visits. The court also expressed concern that father's negative relationship with the Agency was very apparent and not beneficial to the goal of reconstructing a positive relationship between father and the minor. Accordingly, the juvenile court terminated dependency, with custody of the minor to mother with supervised visitation for father. The juvenile court also encouraged father to engage in psychological services and address his alcohol abuse.

DISCUSSION

I

In pertinent part, section 342 provides: "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition. . . . [¶] All procedures and hearings required for an original petition are applicable to a subsequent petition filed under this section." We review the juvenile court's jurisdictional findings for substantial evidence. (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1344.)

Father contends the subsequent section 342 petition alleging the minor was suffering, or at risk of suffering, serious emotional damage within the provisions of section 300, subdivision (c) (serious emotional damage), was improperly sustained. He argues there were insufficient allegations that his conduct may be affecting the minor's emotional wellbeing.

7

For the same reason we did not need to reach the section 300, subdivision (c) allegations in the previous appeal, we need not address them now. "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. [Citations.]" (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

Here, as we previously held, the grounds for jurisdiction under section 300, subdivision (b) were supported by substantial evidence. That decision is final. Even if the section 342 jurisdictional findings, based on section 300, subdivision (c) were erroneous, the juvenile court's jurisdiction would not be undermined. Were we to overturn the section 342 supplemental jurisdictional order that is the subject of this appeal, it would have no effect whatsoever upon the initial jurisdictional order entered by the court here, which we have previously affirmed. (See, e.g., *In re A.B.* (2014) 225 Cal.App.4th 1358, 1363-1364.)

The adverse findings under section 300, subdivision (c) will not affect father in connection with these proceedings, which have been dismissed by the juvenile court, nor are they likely to adversely affect him in a subsequent case. (Cf. *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548-1549.) The juvenile court had jurisdiction over the minor based on *father's* conduct. The exit orders relating to custody and visitation were not based on the fact that the section 300, subdivision (c) allegations were sustained, but on the circumstances presented to the juvenile court and the best interests of the minor. Thus, we need not address father's arguments concerning the subsequent section 342 petition.

8

## II

Upon termination of dependency jurisdiction, the juvenile court entered an exit order, giving custody of the minor to mother and providing supervised visitation for father. Father contends the written exit order regarding visitation does not reflect the court's oral pronouncement. We disagree that a corrected order is required.

After the hearing, the juvenile court made several observations in connection with its ruling. The court expressed concern that the minor had deteriorated to the point of being nonresponsive to questions about father. The court also expressed concern that father's relationship with the Agency was unproductive and that continuing with services in the dependency setting was, therefore, not likely to help father reconstruct his relationship with the minor. The court emphasized, however, that it was not intending to sever father's relationship with the minor by terminating jurisdiction, but rather, was optimistic that a different venue, with the family law court supervision, would benefit the relationship. The court explained that it was giving custody of the minor to mother because she is "the only one that has a stable home" but "that there be visitation [with father] I think supervised should be proper, but I don't think they should be in a box. I think that should be the best they can do in an atmosphere at a park where the child can have visitation if the child wants to play on swings, slide that's part of the positive relationship. I think that should be the focus. It's not to terminate you as a father, not to take him out of your life, but make it where, until there is stability and [father has] dealt with some of these problems . . . ." The court then stressed the importance that father deal with his past as it relates to his psychological issues and his alcohol abuse.

The written order, signed by the judge, was prepared on a form. It states that father will have supervised visitation once a week for one hour, to be supervised by the minor's therapist or by Amador Counseling Center. Father is to pay for the supervision. Mother is to provide transportation to and from visits.

After the written exit orders were initially filed, the parties asked the judge to clarify the ruling as to jurisdiction. The written order had not indicated that the court had sustained the subsequent petition prior to dismissing dependency and the parties were not in agreement as to the court's findings and order. In response, the juvenile court clarified, in open court, that it *had* sustained the subsequent petition and filed an amended written order with that finding clearly marked. No clarification of the written order regarding visitation was requested.

Father now argues that the written visitation order contradicts the court's oral pronouncement in that several aspects of the written order are inconsistent with the juvenile court's comments that it was not intending to sever father's relationship with the minor, but hoping to permit father to reconstruct a positive relationship with him.

Specifically, father complains that the written order results in a "75 percent" reduction in visitation that was not requested by any of the parties. Setting aside the fact that father was not actually visiting the minor at the previously permitted frequency so as to result in such a reduction, it is essential to recognize this is an exit order and father is no longer in reunification. Moreover, the visitation schedule was reasonable in light of the juvenile court's indication that father was still unstable and the minor was deteriorating with the current visitation arrangement.

Father also complains that the written order does not include the requirement that the visits be "outdoors and fun" or "in a fun and open environment." While the juvenile court did indicate that visits should be held, as best as possible, in a place where the minor can play and have some fun, the court cannot, and did not, order or ensure that visits be fun. And it did not order that all visits must be outdoors. While the written order does not contain the court's comment that visits should not just be "in a box," it is not inconsistent with the court's oral comments. To the extent that father did not think the written order was sufficiently clear in this regard, he certainly could have sought clarification, as the parties did regarding the court's jurisdictional order. But the written

10

order is not in conflict with the court's oral pronouncement so as to require this court to harmonize or reconcile a conflict in the record. (See *People v. Smith* (1983) 33 Cal.3d 596, 599.)

Lastly, father complains that the written order requires him to pay for the visit supervision. Such requirement is not unusual in visitation orders and is not inconsistent with anything the court said at the hearing. Father argues the written order is in irreconcilable conflict with the oral orders because the added financial burden hinders the court's goals of having father achieve an ongoing positive relationship with the minor. This stretches the concept of a conflict in the record beyond its reasonable limits. Father also argues "[t]his added burden should not be placed on [him] if the juvenile court did not intend to require supervision by a paid therapist." This argument is circular. The court's oral comments were very clear that the visits were to be supervised and the written order, signed by the court, clearly states that the visits be "supervised by . . . [the] Child's therapist or Amador Counseling Center" at father's expense. Therefore, it is clear that the juvenile court *did* intend the visits be supervised by a paid therapist.

In sum, we do not find the written visitation order to be in conflict with the court's oral pronouncement so as to require this court to harmonize or reconcile a conflict in the record.

## DISPOSITION

The orders of the juvenile court are affirmed.

                           BLEASE          , J.

We concur:

     RAYE              , P. J.

     BUTZ              , J.