Filed 9/4/15  In re K.F. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re K.F., a Person Coming Under the Juvenile Court Law. |  |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E062846 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1400273) |
| v. | OPINION |
| M.F., |  |
| Defendant and Appellant. |  |

APPEAL from the Superior Court of Riverside County.  Tamara L. Wagner,

Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant

and Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Guy B. Pittman and

Carole Nunes Fong, Deputy County Counsel, for Plaintiff and Respondent.

1

Appellant M.F. (mother) appeals from a juvenile court's order terminating parental rights as to her son, K.F. (the child). We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On March 11, 2014, the Riverside County Department of Public Social Services (DPSS) filed a Welfare and Institutions Code[1] section 300 petition on behalf of the child, who was six years old at the time. The petition alleged that he came within section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). The petition included the allegations that mother was currently incarcerated and her exact release date was unknown, and that mother left the child with her boyfriend, who subsequently did not want to care for the child and left him with the maternal grandmother (MG). The MG was an inappropriate caregiver with a substance abuse history and a DPSS history. The petition also alleged that mother neglected the child's needs, in that his teeth were rotten, and there were no records he had ever seen a doctor or dentist or been enrolled in school. In addition, the child showed signs of low-functioning autism, and mother failed to seek treatment or therapy. The petition further alleged that mother had a substance abuse history, and the whereabouts of the child's father[2] were unknown.

The social worker filed a detention report and stated that DPSS received a referral on March 4, 2014, stating that the MG was homeless and was seeking services for the child. The child appeared to be neglected and abused. He was nonverbal, still wore

---

[1] All further statutory references will be to the Welfare and Institutions Code.

[2] The child's father is not a party to this appeal. Therefore, this opinion will focus on mother.

diapers, and had rotten teeth.  The social worker interviewed the MG, who said that mother had been arrested approximately eight months prior.  Mother left the child with her boyfriend, who subsequently contacted the MG and said that if she did not pick up the child, he would contact DPSS for them to take him.  The MG was currently staying on the couch at her friend's home.  She was seeking services for the child and said she had to "scrape a thick layer of black crust" off of his teeth.  She reported that the child did not know how to drink out of a cup, so she had to teach him.  The social worker observed the child and reported that he had a short attention span and did not speak at all, but could repeat his name.  He also smelled bad and had dirty ears.  The social worker reported that the MG had a DPSS history, and a criminal and drug history.

A detention hearing was held on March 12, 2014, and the court detained the child and placed him in foster care.

*Jurisdiction/disposition Report and Hearing*

The social worker filed a jurisdiction/disposition report dated April 11, 2014, and recommended that mother be denied reunification services pursuant to section 361.5, subdivision (e)(1).[3]  The social worker reported that mother was currently incarcerated, and her expected release date was approximately August 18, 2016.  The social worker further reported that the child had never attended or been enrolled in an educational institution.  He could not speak, but would make grunting noises to indicate when he was

---

[3]  Section 361.5, subdivision (e)(1), provides that if the parent is incarcerated, the court "shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child."

upset or frustrated. He was placed in a medically fragile foster family home on March 10, 2014.

The social worker further reported that mother started using methamphetamine when she was 15 years old. She was 33 years old at the time the child was detained. Mother admitted that she still used with her current boyfriend, up until the time she was arrested. She told the social worker that she and her boyfriend both needed drug treatment.

A contested jurisdiction hearing was held on May 14, 2014. The court found that the child came within section 300, subdivisions (b) and (g). The court set a disposition hearing for June 26, 2014, and mother was sent notice of the hearing.

The social worker filed an addendum report and reported that she had contacted the California Institute for Women and was informed that mother was in a fire camp program. A counselor confirmed that her expected date of release was August 18, 2016. He said he did not believe mother would get early release credit; however, if she did, it would only take a couple of weeks off of her time.

A disposition hearing was held on June 26, 2014. Mother was represented by counsel in court. Mother made a telephonic appearance. County counsel requested a continuance, which the court granted. The court authorized mother to make a telephonic appearance at the hearing on July 3, 2014.

The disposition hearing was held on July 3, 2014. Mother was represented by counsel in court, and she appeared telephonically again. The court adjudged the child a dependent of the court and removed him from mother's custody. The court found that

4

mother was incarcerated and denied reunification services pursuant to section 361.5, subdivision (e)(1). The court then set a section 366.26 hearing. The court also advised mother that, in order to preserve any right to review the order on appeal, she had to seek an extraordinary writ by filing a notice of intent to file a writ petition within seven days. The court further directed the clerk to provide written notice of the California Rules of Court to any party not present, and directed DPSS to send written notice to mother of her writ rights, even though she was present on the record. The court set the next hearing for October 31, 2014, and ordered mother to be transported for that hearing. However, it then gave her the option of appearing by telephone again.

The clerk of the court sent written notice of mother's writ rights to her. The written notice was stamped that it was filed with the court on July 3, 2014, but the notice stated at the bottom "Dated: 07/11/14." The clerk signed the form certifying that she sent the notice to mother.

The social worker filed an addendum report on July 3, 2014, reporting that she contacted the maternal great grandmother (MGG), who said she would be willing to have the child placed with her.

On July 8, 2014, a Notice of Appeal was filed by mother's counsel. This court, on its own motion, dismissed the appeal on July 22, 2014. The order explained that an order setting a section 366.26 hearing could not be appealed, but had to initially be the subject of a writ petition. A copy of the dismissal was sent to mother.

*Section 366.26*

The social worker filed a section 366.26 report dated October 31, 2014, and recommended that the court find adoption to be the permanent plan. She also recommended that the court continue the section 366.26 hearing for 90 days to allow DPSS to complete the assessment of the MGG and her husband for adopting the child. The social worker reported that the MGG had been notified as early as July 17, 2014, by DPSS to visit the child, so that DPSS could assess her interactions with him and determine if she could handle placement of him. However, the MGG did not contact the caretaker to check on the child's welfare or set up any visits until recently, when she scheduled a visit for October 11, 2014. The social worker reported that the child's current caretaker was willing to adopt him if no relatives were available or suitable for placement.

The social worker further reported that mother last saw the child at the detention hearing in March 2014. The visit did not last long, as the child did not recognize her, and he was not able to respond to her questions since he was nonverbal. Prior to that visit, the child had not seen mother for one and one-half years, due to her incarceration.

The social worker attached a psychological assessment report, which stated that the child scored in the "severe" range of symptoms for autism. He was observed to be aloof and withdrawn. He did not exhibit any interest in interacting with the examiner. He was primarily nonverbal, but would occasionally echo a single word or unintelligible phrase. He generally did not try to communicate with others, either by verbal or nonverbal means. He demonstrated understanding of the word "no," but did not

6

understand the word "yes." The child inconsistently responded to his name. He was unable to follow instructions consistently and generally needed repetition and prompting. The child made repetitive hand or finger movements and also ran back and forth repetitively.

At a hearing on October 31, 2014, the court continued the matter to January 29, 2015.

The social worker filed an addendum report on January 16, 2015. She reported that the child had been placed with the prospective adoptive parent since March 10, 2014. The social worker attached the preliminary assessment of the prospective adoptive mother. The prospective adoptive mother was the mother of five adopted children. Two of them were now adults, one was in high school, and the other two were four and five years old. The prospective adoptive mother wanted to adopt the child because she and her family loved him and wanted to provide him with a safe and stable home. She took several classes to address the child's severe delays and autism. She appeared to be meeting all of his special needs. She had a keen ability to understand his wants and needs, and he appeared to be responsive to her. Although he could not communicate verbally, it was apparent that there was a bond between the child and the prospective adoptive mother.

The court held a section 366.26 hearing on January 29, 2015, and mother was represented by counsel and also appeared telephonically. She requested a continuance, since there had been no updated information regarding the MGG or the possibility of a relative placement with her. The court noted that the MGG had not visited the child,

7

since the MGG first came forward, except for visits at the urging of DPSS. The court stated that such evidence indicated that the MGG was not really interested in having the child placed with her. In contrast, the court recalled the prospective adoptive mother bringing the child to the detention hearing, and "how phenomenal that caregiver was with this child." The court opined that it would be more detrimental to move the child at this point, given the severity of his autism. The court denied the continuance. Then, after considering all the evidence, the court found it likely that the child would be adopted, terminated parental rights, and ordered adoption as the permanent plan.

## ANALYSIS

### I. Mother Was Given Notice of the Requirement to File a Writ Petition

Mother's counsel filed a notice of appeal from the disposition hearing, and such notice was summarily dismissed, since the disposition hearing was required to be the subject of a writ petition. She now argues that she should be permitted to challenge the disposition hearing order on appeal since she was not timely served with the advisement of the requirement of filing a petition for extraordinary writ. She then contends that, in the event this court finds she waived her right to review of the disposition hearing order, she received ineffective assistance of counsel (IAC). We note that mother was present at the disposition hearing.[4] The court orally advised her that, in order to preserve any right to review on appeal of the court's order, she was required to file a notice of intent to file a writ petition within seven days of the disposition hearing. Because mother was present at

[4] Mother made a telephonic appearance.

8

the time of the making of the order, there was no requirement that she be sent written notice, as well. (§ 366.26, subd. (*l*)(3)(A).) Nonetheless, the clerk mailed mother written notice of her writ rights. There does appear to be some ambiguity in the record as to exactly when the written notice was sent. Assuming arguendo that the written notice was not timely sent and/or there was some type of error with the notice, we will reach the merits of mother's argument.[5]

## II. Any Error in Failing to Make the Required Finding Was Harmless

Mother contends that, in denying her reunification services, the court made the incorrect finding, namely that services were not in the child's best interests. Instead, the court was required to find that services were detrimental to the child. We agree that the court did not make the required finding, but conclude that any error was harmless. (See *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218-1219 (*Jason L.*).)

Section 361.5, subdivision (e)(1), provides, in relevant part: "If the parent or guardian is incarcerated, institutionalized, . . . the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child. In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered and, . . . the likelihood of the parent's discharge from incarceration, institutionalization, or detention within the reunification time limitations

---

[5] As such, we need not address mother's IAC claim.

9

described in subdivision (a), and any other appropriate factors." "Section 361.5, subdivision (e)(1) does not require that each listed factor exist in any particular case, nor does it specify how much weight is to be given to a factor bearing on detriment, listed or not." (*Edgar O. v. Superior Court* (2000) 84 Cal.App.4th 13, 18.)

The court in *In re Corienna G.* (1989) 213 Cal.App.3d 73 (*Corienna G.*) affirmed a permanency planning order, even though the lower court failed to expressly determine that the minors would not be returned to their parents within six months. (Former § 366.25, subd. (d).) In so ruling, the court stated: "While we agree that the better practice would have been for the trial court to have made a required determination on the record, we perceive no practical purpose which would be achieved by such a result. This is not a case . . . where the trial court expressly refused to make such a finding. Nor is it akin to [a case] where a trial court could not have made such a determination on the record. Substantial evidence would amply have supported such a determination here. [Citation.]" (*Corienna G.*, at pp. 83-84.) Furthermore, the court did not feel compelled to reverse the order, since the appellants were not prejudiced by the lack of an express determination, and because the determination could be implied on the record. (*Id.* at pp. 84-85.)

Similarly, mother was not prejudiced in this case since the evidence supported a finding that services would be detrimental to the child, and the finding could be implied on the record. (§ 361.5, subd. (e)(1); see, *Corienna G.*, *supra*, 213 Cal.App.3d at pp. 84-85.) As pertinent here, the child was clearly not bonded to mother. The social worker reported that, at her last visit in March 2014, the child did not recognize her or react to

10

her.  Moreover, the child was six years old at the time of removal, and as such, court-ordered services were to be provided beginning with the dispositional hearing and ending 12 months after the date the child entered foster care.  (§ 361.5, subd. (a)(1)(A).)  He entered foster care in March 2014.  Therefore, the reunification period would have ended in March 2015.  However, mother was incarcerated and was not scheduled to be released until August 2016.  In other words, there was no likelihood of her discharge within the reunification time limitation.  (§ 361.5, subd. (e)(1).)  In addition, there was no evidence of any degree of detriment to the child if services were not offered.  (*Ibid*.)  When the child was in mother's care, she failed to meet his basic needs, much less his special needs due to his autism.  He was six years old, and he still wore diapers and did not know how to drink out of a cup.  He also had poor hygiene and a "thick layer of black crust" on his teeth.  Furthermore, mother had a long history of substance abuse.  She had been using methamphetamine since she was 15 years old and was 33 years old when the child was detained.  She admitted that she needed drug treatment.  We further note that the psychoeducational report from the school district reported that the child would learn best in a "success oriented, highly structured, predictable and positive environment."  Given mother's background, it was highly unlikely that she would be able to provide such environment for the child, even if she was released in time.

We conclude that, had the lower court properly complied with section 361.5, subdivision (e)(1), it undoubtedly would have found that services would be detrimental to the child.  Thus, mother was not prejudiced by the court's failure to make an express

finding. (See *Jason L.*, *supra*, 222 Cal.App.3d at p. 1219; see also, *Corienna G.*, *supra*, 213 Cal.App.3d at pp. 84-85.)

## III. The Court Properly Denied Mother's Request to Continue the Section 366.26 Hearing

Mother contends that the court erred in denying her request to continue the section 366.26 hearing to allow updated information regarding the adoption assessment of the MGG. We disagree.

### A. *Standard of Review*

"Under section 352, a continuance of any juvenile court hearing shall be granted only upon a showing of good cause, and shall not be granted if contrary to the minor's best interests. In considering the minor's interests, 'the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.'" (*In re A.B.* (2014) 225 Cal.App.4th 1358, 1366 (*A.B.*).) "We will reverse an order denying a continuance only upon a showing of abuse of discretion." (*Ibid.*)

### B. *There Was No Abuse of Discretion*

The record shows that the MGG was not enthusiastic about having the child placed with her. Mother had asked for the child to be placed with the MGG on March 27, 2014. That same day, the social worker spoke to the MGG, who said she could not take placement of the child since she was in her 70's and had a teenager she had adopted. By June 10, 2014, the MGG changed her mind and said she would be willing to take the

12

child. However, she said she did not want to traumatize him and wanted to do what was best for him. The social worker told the MGG it would be best to start visitation with the child, so DPSS could see if she would be able to handle him and his behavioral issues. The MGG said she understood. Nonetheless, as of early October 2014, she still had not visited with the child.

In the section 366.26 report filed on October 16, 2014, the social worker reported that DPSS was currently assessing the MGG for placement. The MGG and her husband had completed Live Scans, but her husband needed a criminal exemption. At that time, the social worker requested a 90-day continuance to allow further assessment of the MGG and her family. The social worker noted that the MGG was scheduled for a visit with the child on October 11, 2014. Prior to that, the MGG had not contacted the caregiver to check on the child's welfare or schedule a visit. The court continued the matter to January 29, 2015 to allow more time for assessment.

By the time of the hearing on January 29, 2015, however, there apparently was no updated information on the MGG. Thus, mother requested another continuance to get that information. County counsel informed the court that the MGG was asked to have her home certified and to visit with the child, but she had no information as to whether or not the MGG followed up with those items. County counsel further noted that the MGG was not present at the instant hearing, and there was no information from mother as to whether the MGG was still available to adopt the child.

Counsel for the child requested the court to follow the social worker's recommendation to move forward with the section 366.26 hearing. The child's counsel

13

stated that the child was thriving in his current household. Counsel observed a marked difference in the child between the first time he came to court and the second time. The record shows that the child was placed in his current placement, a medically fragile foster family home, on March 10, 2014. Thus, he had been in that placement for nearly one year. His caregivers were providing him with the attention he needed, had provided him with medical and dental care, and had enrolled him in school.

In view of the circumstances, we cannot say the court abused its discretion in denying mother's request for a continuance. The court noted that the MGG was noticed back in July and in November for the current hearing, but was still not present. It also noted that there was no visitation between the child and the MGG, except at the urging of DPSS. The court further recalled how "phenomenal" the current caregiver was with the child, when the child was brought to court. Given the child's severe autism and the fact that autistic children did not adjust well to change, and considering the current caretaker's history of adopting children, the court opined it would be detrimental to move the child out of his current home. Thus, there was no good cause to delay the proceedings further and wait for the MGG's adoption assessment.

In sum, the court properly considered the child's interests, including his need for prompt resolution of his custody status and the need to provide him with a stable environment. (*A.B.*, *supra*, 225 Cal.App.4th at p. 1366.) The court did not abuse its discretion in denying the continuance.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST _____
J.


We concur:


RAMIREZ _____
P. J.


MILLER _____
J.