Filed 3/28/23 In re W.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re W.R. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E078296 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1900341) |
| v. | OPINION |
| W.R., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Cheryl C. Murphy, Judge. Affirmed.

Law Offices of Arthur J. LaCilento and Arthur J. LaCilento for Defendant and Appellant.

Teresa K.B. Beecham and Prabhath Shettigar, Deputy County Counsel for Plaintiff and Respondent.

1

In this dependency case, the father contends insufficient evidence supports one of the juvenile court's jurisdictional findings and its dispositional order removing two of four children from his custody. We do not decide the merits of his challenge to the jurisdictional finding because other, unchallenged findings establish jurisdiction. We find that sufficient evidence supports the removal order. Accordingly, we affirm.[1]

## I. BACKGROUND

### A. *Initial Petition and Supplemental Petition*

In June 2019, plaintiff and respondent Riverside County Department of Public Social Services (DPSS) filed a dependency petition alleging four children came within section 300, subdivision (b)(1): W.R. (10 years old), L.R. (9 years old), E.R. (6 years old), and O.R. (5 years old). At the combined jurisdiction and disposition hearing the next month, the court found true allegations that defendant and appellant W.R. (father) engaged in domestic violence against A.K. (mother), that mother failed to protect the children from that violence, that mother suffers from unresolved mental health issues, and that both parents failed to fully participate in pre-placement preventive services. The children were kept in the parents' custody, and the parents were provided with family maintenance services.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

DPSS later filed a supplemental petition alleging in part that the parents failed to comply with their case plan and continued to engage in domestic violence in front of the children. In the detention report, DPSS stated that mother continued to experience depression and anxiety and wanted to seek treatment. The report also noted that the father had not controlled his anger in front of the children and that there appeared to have been a physical fight between the parents because mother had "suspicious marking[s] on her face, which she state[d were] from falling down the hill." The juvenile court found the amended allegations true, removed the children from the parents' custody, and ordered family reunification services.

At the six-month status review hearing, the juvenile court returned the children to father's custody, ordered family maintenance services for father, and continued family reunification services for mother. DPSS's status review report noted that father had gone "above and beyond" in participating in his case plan but that there were concerns about his mental health. However, mother had tested positive for methamphetamine on a hair follicle test.

Before the 12-month review hearing, DPSS described neither parent positively. DPSS reported that the children had stated they did not feel "safe" with mother and that she has called them "liars" several times. The report characterized the parents' relationship as "extremely toxic" and stated that the children were "well aware of the continued fighting between the parents." Father, for instance, would play text messages from mother out loud for the children, and he sometimes showed the children mother's

3

social media posts. Following an off-the-record discussion at the review hearing, the juvenile court ordered an evaluation of all four children "to determine if there is parental alienation occurring within the family," "address parenting skills for both mother and father," and address "the appropriateness of the parenting with the children."

The evaluator's report consisted of several interviews with mother, father, the children, and others in regular contact with them. In the report, the evaluator noted a concern that mother was still "likely" using drugs and alcohol in an "irresponsible" manner. The evaluator also concluded that father "has essentially erased the boundary between himself and the children," that father's "disparagement of [m]other and constant chatter and dissatisfaction with pretty much anything related to [m]other undermines the children's security," and that the children were "at extreme risk" of developing symptoms associated with alienated children. The evaluator concluded that "[f]ather has definitely alienated the older three children." [2]

On March 9, 2021, father tested positive for methamphetamine. Soon thereafter, DPSS requested that children be removed from father. The court granted the request, noting that the removal was based on father's positive test and the court's concerns about the children's mental health.

---

[2] The evaluator did not opine on whether O.R., then six years old, had also been alienated.

4

*B. Additional March 2021 Petition*

On March 30, 2021, DPSS filed another petition alleging that the children came within section 300, subdivision (b)(1) because father could not provide regular care due to substance abuse. The two older children, W.R. and L.R., had been placed at one home, with E.R. and O.R. together at another. The court ordered the children detained and set a contested jurisdictional hearing on the petition.[3]

DPSS described a visit between father and the children as follows: "Once the children left the building, [father] punched the doorframe on the outside of the room causing a dent in the doorframe. When asked about this incident, he indicated that he was upset. Additionally, [father] informed [the social worker] after the visit that, 'off the record, I know where all of you guys live. I know where the caregivers live. But don't worry, I won't go within 10 miles of the foster homes.'" The social worker reported that father "specifically mentioned knowing where I live, where my supervisor . . . lives, where my Regional Manager . . . lives and that he [was] working his way up by looking for where [the] Deputy Director . . . lives."

DPSS also reported that E.R. gets "sad when her father talks negatively about the mother, and then [E.R.] states that she does not want to talk with her father because of it." E.R. also stated that father "whispered in her ear that she shouldn't be visiting her mother or talking to her," which made E.R. "very sad."

---

[3] Because father appeals the disposition order only as to the younger children E.R. and O.R., we will focus on their circumstances, mentioning the older children W.R. and L.R. only as necessary for context.

DPSS later requested a restraining order against father, stating that he had called E.R. and O.R.'s caregivers several times and hung up, even though neither the caregivers nor DPSS had given the caregivers' number to father. The request also stated that father had told E.R. that he drove past the caregivers' house and "this made her feel afraid." E.R. "stated that she was afraid that her father would come for her and [O.R.]. She told her caregiver that she felt that she would get into trouble if he did. She stated that she was afraid for her safety." The court granted a temporary restraining order against father.

DPSS subsequently reported that E.R. and O.R. had revealed that when they were removed from father's care, they overheard father telling someone on the phone that if they were removed from his care, he would kill mother and the social worker, which made them "very sad."

At the contested jurisdiction hearing in September 2021, the juvenile court modified the March 2021 petition's allegation to say that father uses (instead of abuses) controlled substances and sustained the modified petition. The court stated that the modification was based on father's explanation that the positive test was due to medication and his subsequent negative tests.[4] It then set a contested dispositional hearing. The court terminated mother's reunification services on the same day.[5]

---

[4] Father claimed that, because mother had stolen his identity, his medical insurance was cancelled, leading him to obtain medication in Mexico, which he believed was tainted with methamphetamine and caused his positive test.

[5] Mother is not a party to this appeal.

Later in September 2021, E.R. and O.R.'s caregiver reported that O.R. had a bruise below the belt line on his back, and that father had pinched him in a restroom. E.R. and O.R. stated that father pinched O.R. E.R. stated that father took O.R. into the restroom and that O.R. "came out with his eyes red." A child abuse and neglect exam stated "[e]valuation suspicious for physical abuse, further information needed."

In October 2021, without objection from DPSS, the juvenile court terminated the temporary restraining order against father after O.R. and E.R. were placed in a new foster home.

At the contested disposition hearing in November 2021, E.R. and O.R. each testified that they wanted to live with father. A social worker testified that E.R. had stated that "if we go back home, there's not going to be people – I don't know how who she was referring to – not going to be there with us." In answering a question about O.R.'s interactions with father over the past 90 days, father's girlfriend stated: "Good. Always loving, hugging him. I love you daddy, kisses." She offered a similar response when asked about E.R.'s interactions with father.

In December 2021, the juvenile court adjudged the children to be dependents of the court, ordered family maintenance services to father for the older children W.R. and L.R., ordered family reunification services to father for E.R. and O.R., and removed E.R. and O.R. from father's physical custody (§ 361, subd. (c)(1)). As to W.R. and L.R., the juvenile court noted that they were already on an extended visit with father and that they wanted family maintenance services with him. As to all four children, the court stated

7

that it "was addressing a claim of parent alienation, and there was a psychologist who was appointed to conduct a psychological evaluation of the entire family, and that report was read and considered, and there was concern regarding the finding of parent alienation by [f]ather." It continued: "This Court was very concerned about allowing the children to remain in [f]ather's care, believing that parent alienation would continue and [m]other would not have contact with the children." It also noted that the March 2021 petition was the "result of [f]ather testing positive for controlled substances."

## II. DISCUSSION

Father makes two contentions. First, he contends that the court's finding of jurisdiction on the March 2021 petition based on his use of controlled substances was not supported by sufficient evidence. Second, he contends that the court's order removing E.R. and O.R. from his custody was not supported by sufficient evidence. We need not decide the merits of the jurisdictional claim but find that sufficient evidence supports the removal order.

### A. *Jurisdiction Finding*

"In dependency proceedings, the basic pleading device to assert a child falls within the juvenile court's jurisdiction is a petition. [Citation.] 'It may be an original petition (§ 332), a subsequent petition for children who are already dependents when there are "new facts or circumstances" that bring them within a category of section 300 "other than those under which the original petition was sustained" (§ 342), or a supplemental petition when there are facts which indicate that a previous disposition is

8

not appropriate. (§ 387.)'" (*In re A.B.* (2014) 225 Cal.App.4th 1358, 1364.)  All three types of petitions were filed in this case.

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

In *In re A.B.*, *supra*, 225 Cal.App.4th at pp. 1363-1364, the Court of Appeal held that where substantial evidence supports jurisdiction on a second petition, that renders irrelevant the question of whether jurisdiction on an original petition was supported. Noting that "[a]ll procedures and hearings required for an original petition are required for a subsequent petition and are conducted under the same rules," "so long as [a] jurisdictional finding under [a] subsequent petition is supported by substantial evidence, reversal of the jurisdictional finding under [an] original petition would be futile." (*Id.* at p. 1364.)

Here, the same issue is reversed, in that only the jurisdictional findings on the later petition are challenged, but the result is the same.  Father never contested the jurisdictional findings made on either the original petition filed in June 2019 or on the supplemental petition filed in August 2019.  Instead, he challenges only those findings

9

made on the March 2021 petition. Because even a reversal on those jurisdictional findings would not affect whether any of the children are dependents of the court, the propriety of those findings does not matter. (See also *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate"].)[6]

## B. Removal Order

"To remove a child from parental custody, the court must make one of five specified findings by clear and convincing evidence. (§ 361, subd. (c).) One ground for removal is that there is a substantial risk of injury to the child's physical health, safety, protection or emotional well-being if he or she were returned home, and there are no reasonable means to protect the child. (§ 361, subd. (c)(1).) "'Clear and convincing" evidence requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind. [Citations.]' [Citation.] Actual harm to a child is not necessary before a child can be removed. 'Reasonable apprehension stands as an accepted basis for the exercise of state power.'" (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.)

---

[6] We may still decide an immaterial issue "if the purported error infects the outcome of subsequent proceedings." (*In re Dylan T.* (1998) 65 Cal.App.4th 765, 769). This principle, however, does not apply here. In ordering removal of E.R. and O.R. from father's custody, the juvenile court cited to both the positive methamphetamine test and alienation. As we discuss below, however, there is substantial evidence to affirm the removal even if it were based only on alienation.

"A juvenile court's removal order at a disposition hearing will be affirmed on appeal if it is supported by substantial evidence. [Citation.] 'Evidence sufficient to support the [juvenile] court's finding must be reasonable in nature, credible, and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case. [Citation.]' [Citation.] We consider 'the evidence in the light most favorable to respondent, giving respondent the benefit of every reasonable inference and resolving all conflicts in support of the [challenged order]. [Citation.]'" (*In re V.L.*, *supra*, 54 Cal.App. 5th at p. 154.) Moreover, "'appellate review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands. . . . [W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.'" (*Id.* at p. 155, citing *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.)

Substantial evidence supports the removal order here. Even if we set aside any evidence related to father's positive drug test result, the juvenile court's concern about the children's alienation was well supported by the record. An independent expert concluded that father "definitely" alienated the older three children from their mother. He stated that father's "disparagement of [m]other and constant chatter and dissatisfaction with pretty much anything related to [m]other undermines the children's security" and that, as a result, the children were at "extreme" risk of developing

11

symptoms such as low self-esteem, depression, lack of trust, low achievement, and anger and bitterness over time lost with the alienated parent. Those risks to well-being were supported by E.R.'s statements that she would not want to talk to father because he would talk negatively about mother, which made her "very sad." Those risks were worsened by the threats, leading to a temporary restraining order, that father made toward the social worker and E.R. and O.R.'s foster parents. Moreover, E.R. and O.R. heard father say he would kill mother and the social worker if they were removed from his care, a separate threat that unsettled the children's well-being. In all, not only were the serious risks to E.R. and O.R.'s well-being observed by the evaluator, father's behavior bore those concerns out, and the record gives no indication that behavior will cease.

In response, father points to various parts of the record to show his overall cooperation with DPSS and the juvenile court. This argument fails to account for the standard of review; the presence of some evidence in support of a contrary conclusion does not negate the existence of substantial evidence. (See *In re V.L.*, *supra*, 54 Cal.App. 5th at p. 154.) Viewing the evidence in the light most favorable to DPSS, the record contains substantial evidence from which the juvenile court could have found it highly probable that appropriate grounds existed for E.R. and O.R.'s removal. The juvenile court's decision therefore may not be disturbed.

## III. DISPOSITION

The juvenile court's December 16, 2021 jurisdictional findings and disposition orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.