Filed 1/15/16  In re Justice T. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JUSTICE T., a Person Coming Under the Juvenile Court Law. | B262194 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK07724) |
| Plaintiff and Respondent, | |
| v. | |
| BRIANA T., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed as modified.

Toni Taylor Buck, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Briana T., appeals from the orders of the juvenile court taking jurisdiction over six-month-old Justice T. (Welf. & Inst. Code, § 300)[1] and releasing Justice to mother while also allowing the Department of Children and Family Services (the Department) to release Justice also to father, John M.,[2] after assessing father's housing. We affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Family background*

Mother, aged 24, lives with the maternal grandmother who is the guardian of mother's 2-year-old son Justin. Mother had a three to four year relationship with father but they never married. Mother was diagnosed with bipolar disorder when she was in seventh grade, and has been hospitalized seven times since 1998. Mother claimed that since then she has not had any mental health issues and has not taken medication. However, just two months before Justice was born, mother took an overdose of medication in an attempt to harm herself, apparently because of her own father's recent death. She was found slumped over in the front yard where Justin was playing. Mother was hospitalized on a psychiatric hold. The Department did not open a case at the time because mother provided a notarized letter requesting that the grandmother become Justin's legal guardian. The Department did institute a safety plan.

Mother came to the attention of the Department again in July 2014 when mother took 12-day-old Justice to the emergency room because the child had been vomiting and did not feel well. Hospital staff mistakenly believed that mother had left the hospital after being told that Justice might have to remain over night. The caller was concerned because of mother's mental illness. Mother did return to the emergency room, but her affect had changed: it was completely flat and mother appeared agitated. She gave only

---

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    Father is not a party to this appeal.

2

single-word answers. Justice was reported to have a partial obstruction of the bowel. Since then, mother missed two follow-up appointments with the baby's doctors.

Mother commenced therapy in June 2014. However, the maternal grandmother explained that mother has a history of leaving treatment and she had not been compliant about taking her medication "in quite a long time." The maternal grandmother believed that mother needed services and monitoring by the Department.

Mother's therapist at LA Child Guidance Center confirmed that mother was in treatment and opined that she was capable of caring for both of her children if she developed specific goals to strengthen her skills for managing stress. However, the therapist was concerned about mother's long history of mental illness and inconsistency with treatment. Mother had not been in treatment for long enough this time around for the therapist to determine whether mother was complying.

Father had recently moved to San Diego and applied for a custody order. He was aware of mother's mental health problems and expressed concern about her ability to care for Justice.

In September 2014, the maternal grandmother contacted the children's social worker to report that her landlord intended to raise the rent if mother continued living with her, and so mother was spending several nights a week with the maternal aunt. Asked whether Justice had been taken to the hospital for her appointment that morning, the grandmother replied that she was not aware of the appointment and that mother had gone to school leaving Justice home all day.

Also, mother had ceased being compliant with treatment by September 2014. She had missed two weeks of therapy causing her therapist to express concern about her mental health. Mother's excuses for missing therapy included transportation problems and school demands. Mother was late for a medication appointment and "had an episode" when the physician refused to see her or reschedule her appointment. Mother rescheduled her medication appointment for the earliest date possible, which was not until the following month.

3

The juvenile court denied the Department's application to remove Justice from mother's care finding that the Department failed to show there were no reasonable means to protect the child without removal. The court ordered the Department to conduct a team decision making meeting with the parents to determine whether a safety plan could be devised to prevent removal.

The Department concluded that Justice was at high risk for future abuse or neglect. The Department filed a petition alleging that mother's history of mental and emotional problems, her hospitalization, her failure to regularly participate in psychiatric treatment or to take her prescribed psychotropic medication, rendered her incapable of providing the child with regular care and supervision, threatened Justice's physical health and safety, and placed the child at risk of physical harm and damage. (§ 300, subd. (b).)

At the detention hearing, the juvenile court found father was Justice's presumed father and released the child to mother's custody on the condition that mother and child reside with the maternal grandmother.

2. *Jurisdiction*

Father wanted custody of Justice but was amenable to sharing custody if mother was compliant with treatment. His visits with Justice were without problems. He moved to new housing on a naval base, which had not yet been assessed by the Department.

Justice appeared to be developmentally on target. The Department noted as family strengths that the parents were employed and able to access community services. Mother was seeking higher education. The children were appropriately attached to mother who had family support. Mother had moved to appropriate housing with the grandmother.

Mother and grandmother confirmed that mother stopped taking medication when she turned 18 years old. Mother claimed that she has not wanted to hurt herself or others since then. The social worker opined that mother continued to be resistant to mental health treatment as evidenced by her missing therapy appointments. Nonetheless, the Department noted that mother was seen to be adequately caring for Justice.

Mother struggled to comply with treatment. Between June and the end of November 2014, mother had attended 13 of the 23 scheduled appointments. She missed

4

more in December 2014.  Mother's therapist put mother on an "attendance contract" and gave her the option of having therapy at home.  Nonetheless, mother canceled her appointment in January 2015, and the therapist reported that mother regularly canceled within 24 hours of her standing weekly meetings, changed appointment dates and location, and called to ask to meet on short notice, which the therapist cannot accommodate.  Mother was reassessed and diagnosed with borderline personality disorder in addition to bi-polar disorder.  The therapist had become "*very concerned*" for Justice's safety and wellbeing.  (Italics added.)

As a result, the Department commenced unannounced home visits and found that mother appeared attentive and appropriate with the children.  The Department opined that mother would benefit from participation in family preservation services, mental health services with medication, and individual counseling.  It requested that the court offer mother family maintenance services.

Mother enrolled in a new mental health program at Community Build in January 2015 and participated in an initial session "with great enthusiasm."  The program provided mother with an interventionist who would be assisting her.

3.  *The hearing*

At the adjudication hearing on January 27, 2015, father's attorney informed the juvenile court that father's portion of the case had been "settled."  Mother and Justice's attorney requested that the entire petition be dismissed on the ground that the Department had not shown a nexus between mother's mental health diagnosis and any current risk to the child.  Rejecting that argument, the juvenile court sustained the count in the petition naming mother and dismissed the count pled as to father.  The juvenile court ordered family maintenance services for mother in accordance with the signed case plan.

As for placement, the juvenile court inquired, "since the Department has changed the – has dismissed the . . . count [naming father], why isn't [the placement plan] home of parent?"  Father's attorney responded, "My client is about to move into housing – Navy housing, and so they have not assessed his home yet. . . .  If the court will give discretion,

5

then I think they'll work it out." The court noted, "I'll give them discretion," and ordered mother was to "*retain physical custody of this child*." (Italics added.) Mother appealed.

## CONTENTIONS

Mother contends the findings underlying the jurisdiction and disposition orders are not supported by the evidence.

## DISCUSSION

1. *No error in taking jurisdiction*

We review the juvenile court's jurisdictional findings under the substantial evidence test. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Substantial evidence is evidence that is reasonable in nature, credible, and of solid value. (*In re A.B.* (2014) 225 Cal.App.4th 1358, 1363.) In determining whether there is substantial evidence, "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) A social study prepared by the petitioning agency, and any hearsay evidence contained in it, is admissible and constitutes competent evidence upon which a finding of jurisdiction pursuant to section 300 may be based. (§ 355, subd. (b).)

Section 300, subdivision (b), consists of three elements: " '(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.]" (*In re David M.* (2005) 134 Cal.App.4th 822, 829.) "The third element 'effectively requires a showing that at the time of the jurisdiction hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur). [Citations.]' [Citation.]" (*Ibid.*) "[P]revious acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur." (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 565.)

6

The record contains ample evidence supporting the jurisdiction order. Mother attempted suicide while pregnant with Justice. Although there is no indication that mother's overdose injured Justice, mother continues to suffer from mental illness that is serious enough to result in hospitalization and render her unable to care for Justin. More important, mother does not appear to appreciate the gravity of her mental illness. She continues to deny having suicidal ideation, notwithstanding she attempted suicide just six months earlier while looking after her toddler. She had had no treatment or medication for years before Justice was born. Since then, she canceled nearly half of her therapy appointments. She also missed her appointment with her prescribing psychiatrist, supporting the inference that mother went without appropriate medication until at least October 2014. Although mother enrolled in a new treatment program just before the jurisdiction hearing, this is simply more in a longstanding pattern of discontinuing treatment, as the record indicates only that mother attended the intake session. Mother also failed to follow up on some of Justice's medical appointments even though the child suffers from an obstructed bowel. Consequently, the grandmother believed mother required Departmental supervision; the Department opined that mother lacked insight into her own problems which placed Justice at risk of harm; and mother's therapist, who originally felt mother could safely care for Justice finally became "*very concerned*" for the baby's safety and wellbeing. (Italics added.)

At the time of the jurisdiction hearing, Justice was six months old and hence a child of "such tender years that the absence of adequate supervision and care poses an inherent risk to [her] physical health and safety. [Citations.]" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, citing *In re Stephen W.* (1990) 221 Cal.App.3d 629 [infant]; *In re Robert P.* (1976) 61 Cal.App.3d 310 [two year old].) Mother has a long history of failing to treat her mental illness and failing to understand the seriousness of her illness. She has already placed her children at serious risk of harm by attempting suicide. The record fully supports the juvenile court's implied conclusion that without full and consistent therapy, medication management, and Department intervention, baby Justice

7

remains at substantial risk of harm. A juvenile court is not required to wait until a child is actually injured before it assumes jurisdiction. (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.)

2. *The disposition order was not error*.

Mother contends that the juvenile court erred in granting the Department discretion to remove Justice from mother's custody and place her with father[3] because the court made no finding as constitutionally required, by clear and convincing evidence, that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c)(1).) Mother is factually and legally incorrect.

The Department requested Justice be released to mother's care. The parties agreed to a case plan for mother that included family preservation and that mother make Justice available for unannounced house calls. Hence, the parties contemplated no removal. After sustaining the petition's allegations with respect to mother, the juvenile court the court specifically ordered that "mother shall *retain physical custody* of this child" under the supervision of the Department.[4] (Italics added.) As mother accurately observes, her

---

[3] Mother cites *In re E.T.* (2013) 217 Cal.App.4th 426 at page 439, which is inapplicable. That case involves section 361.3 which governs preferential consideration for placement of a child *removed* from a parent's physical custody whereas Justice was not removed from mother's physical custody. Likewise, mother's reliance on *T.W. v. Superior Court* (2012) 203 Cal.App.4th 30 is unavailing as that case involves removal of a child from physical custody under section 366.26, subdivision (n).

[4] The court's minute order states: "By clear and convincing evidence pursuant to WIC 361(c): Substantial danger exists to the physical health of minor(s) . . . and there is no reasonable means to protect without removal from parent's . . . physical custody." However, in its oral pronouncement, the court made no such finding, and instead ordered: "mother shall retain physical custody of this child, but . . . she is placed under the supervision of the Department."

Generally, when there is a discrepancy between the oral pronouncement as reflected in the reporter's transcript and the minute order contained in the clerk's transcript, the oral pronouncement controls. Courts presume any inconsistency is the

8

physical custody cannot be changed without a juvenile court finding under section 361, subdivision (c). However, because the court dismissed the petition's only count pertaining to father, he was non-offending. Thus, as the court was aware, it could have released Justice *to both parents*. The court did not place Justice with both parents at this hearing because the Department had not yet assessed father's new home on the Navy base for safety. The court did not give the Department discretion to *remove* physical custody of Justice from mother under section 361, subdivision (c). Rather, a fair reading of the record shows that the court delayed what would be a home-of-*both*-parents order until the Department assessed father's house. Physical custody of Justice always remained with mother under the disposition order mother challenges.

result of clerical error and rely upon the oral pronouncement contained in the reporter's transcript. (*In re J.P.* (2014) 229 Cal.App.4th 108, 118, fn. 4.)

## DISPOSITION

The jurisdiction order shall be modified to delete finding number 5 and all references to Welfare and Institutions Code section 361, subdivision (c) from the January 27, 2015 minute order.  As so modified, the order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, Acting P. J.

We concur:

LAVIN, J.

JONES, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.