Filed 11/2/20  In re J.R. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re J.R., a Person Coming Under the Juvenile Court Law. | B299814 |
| | (Los Angeles County Super. Ct. Nos. 19CCJP04187 19CCJP04187A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J.R., <br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Martha A. Matthews, Judge.  Dismissed

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine Miles, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

_____

Father J.R. appeals from juvenile court's jurisdictional and dispositional orders establishing jurisdiction over his son, J., pursuant to Welfare and Institutions Code section 300,[1] and giving primary custody to J.'s mother, M.R.  Father contends that there was insufficient evidence to establish that J. was at risk of harm.  Father concedes that the court will maintain jurisdiction over J. regardless of the outcome of this appeal, as mother has not appealed the jurisdictional findings related to her conduct. He also concedes that his challenge to the court's dispositional orders has been rendered moot by further rulings in the juvenile court while the appeal was pending.  Nevertheless, he urges us to exercise our discretion to consider his assertions of error regarding jurisdiction.  We decline to do so and dismiss the appeal.

## BACKGROUND

### *Petition, Jurisdiction, and Disposition*

Mother and father have one child together, J., born in 2013.[2]  In January 2017, the family court granted mother's petition to annul her marriage to father. The court awarded mother primary physical custody of J. and granted father visitation every other weekend.

_____

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]Mother is not a party to this appeal.

2

On June 28, 2019, the case was referred to the Los Angeles County Department of Children and Family Services (DCFS) after father brought six-year-old J. to the sheriff's station to report abuse by mother. Mother had informed father earlier in the day that J. had fallen and sustained a bruise. However, when the babysitter dropped J. off for father's visitation, father noticed that J. had several fresh scratch marks on his face and body, and bruises on his thigh. J. was interviewed by a sheriff's deputy and by a DCFS children's social worker (CSW). J. reported that mother was upset with him, scratched him, and hit him with her hands and a belt. Father told the CSW that he had made several prior reports about mother's physical abuse and neglect. He also reported a prior incident in which he observed mother driving under the influence of alcohol with J. in the car.

Mother denied any abuse. She told the CSW that J.'s babysitter had a 10-year-old autistic son, and that while the babysitter was transporting both children, the son had a "temper tantrum episode," lashing out at J. and scratching him. Mother stated that father had made multiple reports to DCFS alleging that she had abused the child, but that J. had ADHD and sometimes sustained scratches and bruises from rough playing. Mother also stated that J. informed her that father's girlfriend's children were mean to him and hit him, and that J. returned from visiting father with bruises.

DCFS noted a pattern of ongoing physical abuse referrals by both parents against each other, including nine DCFS investigations for physical abuse and neglect between 2016 and 2018. Most of the incidents involved scratching or bruising and many included visits to the hospital for evaluation. The referrals were ultimately closed, mostly as inconclusive.

DCFS filed a dependency petition on July 2, 2019 on behalf of J. under section 300, subdivisions (a) and (b)(1). In count a-1, the petition alleged that mother had physically abused the child, including on June 28, 2019, when she grabbed J. by his arm, slapped his face, and repeatedly struck his body with her hands and belt. Count b-1 alleged the same abuse by mother. Count b-2 alleged that on a prior occasion, mother endangered J. by driving under the influence of alcohol while J. was in the vehicle. J. was detained from both parents and placed in shelter care.

In its jurisdiction/disposition report, DCFS reported a further interview with J. on July 15, 2019. J. denied being hit by mother or father and stated that only the babysitter's son "hit me too much on my legs and arms." J. described both mother and father's girlfriend as "nice." DCFS also spoke with the babysitter, who confirmed that her son had scratched J. repeatedly on June 28, 2019. Both parents reported concerns with J.'s safety when he was with the other parent.

DCFS noted that J. had made inconsistent statements during the course of the investigation regarding his injuries, and further that J.'s "high energy and activity due to his diagnosis of ADHD" was a possible contributing factor for his past injuries. DCFS concluded that the injuries J. sustained on June 28, 2019 were caused by the babysitter's son. DCFS therefore recommended that the court dismiss counts a-1, b-1, and b-2 from the petition, as there was no evidence to support the allegations that mother physically abused J. or endangered him by driving under the influence. DCFS requested a continuance to amend the petition to include a count of emotional abuse against father and mother, stating that in multiple prior referral investigations, father and mother "recycled prior allegations of abuse and neglect

4

against each other to gain leverage regarding J[.]'s custody."

DCFS filed a first amended petition on July 23, 2019, adding allegations under section 300, subdivisions (b)(1) and (c). As amended, count b-3 alleged that mother and father "created a detrimental home environment" for J. by "accusing each other of abusing and neglecting" J. and reporting such abuse and neglect to law enforcement and child protection services "for the purpose of gaining and/or maintaining custody" of J. DCFS alleged one prior incident in which father confronted mother by telephone about neglecting J. Father instructed J. to speak to mother to support father's allegation, and mother yelled at J. to stop lying. The petition further alleged that J. showed behaviors indicating emotional distress, including hitting peers and destroying his own property. Count c-1 contained the same allegations.

At the adjudication and disposition hearing on July 24, 2019, the court dismissed counts a-1, b-1, b-2, and c-1. As to the remaining count, b-3, the court found "substantial evidence of a pattern of conduct by both parents...the overall result has been to hurt their child." The court noted that the abuse allegations by the parents began at the time of their separation and family court proceedings. The court continued, "If someone is going to accuse someone of physical abuse every time a six-year-old boy has a bruise, this child is going to have so many interactions with police and social workers that that in and of itself is going to harm the child. . . . [T]here just seems to be a lot of reaction to things that are kind of normal during childhood being weaponized against each other, and it has to stop." The court further noted that the evidence of J.'s behavioral issues suggested "that the child is feeling some emotional turmoil and kind of acting it out through his behavior," and "tend to show that the

5

child is being affected by all of this conflict that is going on over him."

The court declared J. a dependent and sustained the amended count b-3, finding father's and mother's conduct placed J. at risk of suffering serious emotional damage and physical harm. The court released J. to the home of both parents, with primary custody to mother and unmonitored, weekend visitation for father.

Father timely appealed. DCFS filed a cross-appeal, challenging the court's dismissal of count c-1.

### Subsequent events during appeal[3]

On January 24, 2020, DCFS received a call from mother reporting physical abuse by father. According to mother, on January 23, 2020, J. disclosed to her that father had scratched him earlier that day while the family was at the courthouse for a hearing. J. purportedly told mother that father took him into the bathroom and checked his body for marks and bruises. Father then purposely scratched J. on his back, resulting in two visible scratches. Mother also brought J. to the police station on January 24, 2020 making the same allegations. J. also had visible bruising.

DCFS filed a subsequent petition on February 4, 2020 under section 342, alleging dependency jurisdiction under section 300, subdivisions (a) and (b)(1).[4] Counts a-1 and b-1 alleged that

---

[3]DCFS filed two unopposed requests for judicial notice of the dependency court documents reflecting developments in the case while this appeal was pending. We granted the first request and now grant the second request as well.

[4]A section 342 subsequent petition applies to a child who is already a dependent when there are "new facts or circumstances,

6

J. was medically examined on January 24 and found to have a linear bruise on his back, which was "not consistent with explanations of the manner in which the child sustained the injuries," and "would not ordinarily occur except as the result of deliberate, unreasonable and neglectful acts" by the parents.

At the detention hearing on February 5, 2020, the court removed J. from the custody of his parents and ordered him placed into shelter care. The court further ordered monitored visitation for both parents.

On February 26, 2020, DCFS filed a supplemental petition for a more restrictive placement under section 387.[5] The petition added count s-1, alleging that the previous disposition was not effective, as mother and father "continued to establish a detrimental and endangering home environment" for J. by continuing to accuse each other of abuse and neglect, including blaming each other for the latest marks found on J.'s back.

DCFS filed a jurisdiction/disposition report on February 27, 2020. J. told the CSW that father scratched him on his back and he did not know why and did not feel it happen. J. also said that when mother saw the scratches, she told J. that "they were going to take me away from her and my dad," and that father had scratched J. "because he wants my mom to go to jail." DCFS concluded it was unlikely that father deliberately injured J. as

---

other than those under which the original petition was sustained," that brings the child within a category of section 300.

[5]When a dependent child remains in the care of a parent, DCFS may file a supplemental petition under section 387 seeking an order changing or modifying a previous order by removing the child from the physical custody of the parent. The petition must establish that the previous disposition has not been effective in the rehabilitation or protection of the child. (§ 387, subd. (b).)

alleged, but that it could not determine who caused the marks on J.'s back or when it occurred. DCFS recommended dismissal of counts a-1 and b-1. DCFS further concluded that the parents "have not benefitted from any services and continue to blame one another for causing harm to the child," and that it was "clear that the child continues to be manipulated and his emotional wellbeing is being jeopardized by this parents." Thus, DCFS recommended the court sustain count s-1.

At the adjudication and disposition hearing on August 20, 2020, the court dismissed the section 342 petition, including counts a-1 and b-1. The court sustained the allegations in count s-1 of the section 387 petition as to both mother and father, finding that jurisdiction over J. remained necessary under section 300, subdivision (b)(1). The court also found removal from mother and father was necessary and ordered monitored visitation for both parents.

## DISCUSSION

Father appeals from the court's July 24, 2019 order sustaining the jurisdictional allegations regarding his conduct in count b-3 of the amended petition under section 300, subdivision (b)(1), as well as the court's original dispositional order granting mother primary custody. He does not challenge the assertion of jurisdiction based on mother's conduct, and mother has not appealed. As such, father acknowledges that the court's jurisdictional orders will not be reversed regardless of the outcome of this appeal. "[A] jurisdictional finding good against one parent is good against both" because dependency jurisdiction attaches to the child, not the parents. (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) In addition, in his reply brief, father conceded that his challenge to the dispositional order was

8

rendered moot after the court detained J. from both parents based on new allegations in February 2020.

Given this procedural posture, we requested further briefing from the parties regarding whether father's appeal was justiciable. In his response, father urges us to exercise our discretion to review the original sustained jurisdictional allegations against him. DCFS argues that father's appeal is not justiciable and should be dismissed.

Under the doctrine of justiciability, courts generally do not act upon or decide moot questions or abstract propositions, nor do they issue advisory opinions. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 (*I.A.*).) "An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*Id.* at p. 1490.) "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence," or is unchallenged. (*Id.* at p. 1492.)

On the other hand, we have recognized an exception to this general rule: "[W]e generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as a basis for the dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citation]; or (3) 'could have other consequences for the [the appellant], beyond jurisdiction' [citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762, 763 (*Drake M.*).)

9

Here, the jurisdictional findings at issue no longer serve as the basis for any challenged dispositional orders, as father has conceded that his challenge to disposition is now moot. However, father argues that we should reach the merits of his jurisdictional challenge, citing the potential implications between being found "an 'offending' parent versus a 'non-offending' parent." (*Drake M., supra*, 211 Cal.App.4th at p. 763.) He contends that the jurisdictional findings against him "have and will continue to prejudicially affect him in the instant dependency proceeding."

We are not persuaded. The cases cited by father do not evaluate justiciability in situations where, as here, the court has sustained a subsequent petition based on new conduct. (See *Drake M., supra*, 211 Cal.App.4th at pp. 762-763 [challenge by one parent to original allegations]; *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 [exercising jurisdiction over mother's partial challenge to the jurisdictional findings because of the "pernicious" nature of those findings, including that mother failed to protect the children from a risk of sexual abuse].) Here, regardless of the sufficiency of the evidence supporting the original petition, the court sustained a supplemental section 387 petition based on new conduct by both parents, and removed J. from their custody. As such, father's vague assertions that the original jurisdictional findings regarding father's conduct could impact possible future dependency proceedings involving J. are insufficient to establish prejudice. (See *In re A.B.* (2014) 225 Cal.App.4th 1358, 1364 ["so long as the jurisdictional finding under the subsequent petition is supported by substantial evidence, reversal of the jurisdictional finding under the original petition would be futile"].)

10

Under these circumstances, "the issues Father's appeal raises are "'abstract or academic questions of law'" [citation], since we cannot render any relief to Father that would have a practical, tangible impact on his position in the dependency proceeding.  Even if we found no adequate evidentiary support for the juvenile court's findings with respect to his conduct, we would not reverse the court's jurisdictional and dispositional orders nor vacate the court's assertion of personal jurisdiction over his parental rights." (*I.A., supra*, 201 Cal.App.4th at p. 1492.)  Thus, we decline to address the substance of father's challenge to the court's jurisdictional findings.  We also dismiss the cross-appeal by DCFS as moot.

**DISPOSITION**

Father's appeal and DCFS's cross-appeal are dismissed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

MANELLA, P. J.

WILLHITE, J.

11