Filed 2/27/24  P. v. Blake CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KELLY MARIE BLAKE,<br><br>Defendant and Appellant. | C098981<br><br>(Super. Ct. Nos. 19CF01975, 22CF02288) |

Defendant Kelly Marie Blake pled no contest to possessing drugs in jail (Pen. Code, § 4573.6, subd. (a)) and was placed on formal probation for a term of five years in case No. 19CF01975.[1]  She was charged with additional drug offenses some three years later in case No. 22CF02288.  She pled guilty to transportation or sale of a controlled substance (Health & Saf. Code, § 11352, subd. (a)) and admitted violating her probation

_____

[1] Undesignated statutory references are to the Penal Code.

1

in case No. 19CF01975. The trial court denied probation in case No. 22CF02288 and sentenced defendant to four years in county prison. The trial court then terminated probation in case No. 19CF01975 and sentenced defendant to county prison for one year, consecutive to the term imposed in case No. 22CF02288. The trial court also imposed various fines and fees.

Defendant appeals, raising various claims of sentencing error. She argues the trial court should have ordered a risk/needs assessment and should have continued the sentencing hearing so such an assessment could be done. She also argues the trial court erred in imposing fees and fines without determining her ability to pay. We conclude the abstract of judgment must be corrected to accurately reflect the number of days suspended from the sentences in both cases and to reflect the trial court's oral pronouncement of judgment. We affirm the judgment.

## I. BACKGROUND

A detailed recitation of the facts underlying defendant's crimes is unnecessary to our resolution of the issues on appeal. It suffices to say that defendant pled no contest to possessing drugs in jail (methamphetamine and heroin) in case No. 19CF01975. The trial court suspended imposition of sentence, placed defendant on formal probation for a term of five years, and ordered her to successfully complete a drug court program.

Defendant was charged with additional drug offenses in case No. 22CF02288 in May 2022. (Health & Saf. Code, §§ 11351, 11352, subd. (a), 11378, and 11379.) She pled guilty to one count of transportation or sale of a controlled substance (Health & Saf. Code, § 11352, subd. (a)) and admitted violating her probation in case No. 19CF01975.

Defendant, then 45 years old, appeared for sentencing in both cases in June 2023. The trial court began the hearing by asking whether the parties were ready to proceed with sentencing. Defense counsel replied: "Yes, [y]our Honor. No legal cause why judgment and sentence cannot now be pronounced."

2

The trial court then said it had read and considered the original and supplemental probation reports in case Nos. 19CF01975 and 22CF02288, respectively, and was inclined to follow the probation department's recommendation and impose the middle term (four years) with mandatory supervision. Defense counsel responded by informing the trial court that defendant survived an unreported violation of section 261 at the age of 14, some 31 years earlier. In defense counsel's opinion, the ordeal was the underlying cause of defendant's drug use and would best be addressed by probation and residential treatment. Defense counsel also said that defendant had recently been accepted to a residential rehabilitation facility. The prosecutor responded that defendant was welcome to report the violation and could receive treatment as a condition of mandatory supervision. Indeed, the prosecutor observed, the probation department recommended precisely such a condition.

Defense counsel then said: "Your Honor, I would ask for a RANT assessment of Ms. Blake. I think that's necessary for a proper sentence in this case."[2] The trial court replied: "Don't you think it's a little late? We're on for sentencing, Mr. [defense counsel]." Defense counsel responded: "I understand that. I've been told the RANT assessment at this stage is appropriate." Following further discussion, the trial court found a factual basis for defendant's plea and found her in violation of probation. The trial court denied defendant's request to continue probation, noting her poor past performance and inability to comply with reasonable terms and conditions of probation.

The trial court then considered the aggravating and mitigating circumstances identified in California Rules of Court, rules 4.421 and 4.423.[3] The trial court found several circumstances in aggravation, including defendant's numerous and increasingly

[2] As we shall discuss, the parties agree that the acronym "RANT" stands for "risk and needs triage," which appears to be a type of risk assessment tool.

[3] All undesignated rule references are to the California Rules of Court.

3

serious prior convictions, her prior prison terms, her prior performance on probation, and the fact that she engaged in conduct indicating a serious danger to society.

The trial court interpreted defense counsel's reference to defendant's status as a survivor of sexual assault at the age of 14 as an invitation to consider her prior victimization and/or childhood trauma as mitigating circumstances. (See rule 4.423(b)(4)-(5).) The trial court declined the invitation, stating: "As to the reference, I believe, to mitigating factor, pursuant to . . . section 1170, sub[division] (b), subsection (6), I have not been provided with any information regarding [defense counsel's] reference to any prior trauma suffered by Ms. Blake; therefore, no nexus could be found because no information was provided." The trial court found no circumstances in mitigation.

Although the trial court found several aggravating circumstances and no mitigating ones, the court was not convinced the upper term would serve the interests of justice. Accordingly, the trial court denied probation and sentenced defendant to four years in county prison (the middle term) in case No. 22CF02288. The trial court terminated probation in case No. 19CF01975 and sentenced defendant to a consecutive one-year county-prison term, or one third the middle term of three years, with 165 days' custody credit. The court suspended 730 days of the sentence in case No. 22CF02288, suspended 200 days of the sentence in case No. 19CF01975, and ordered that the suspended time be served under mandatory supervision.[4] The trial court also imposed various fees and fines.

---

[4] At the sentencing hearing, the trial court initially suspended 731 days of the sentence in case No. 22CF02288, and 83 days of the sentence in case No. 19CF01975. However, the probation department observed the trial court may have aggregated the suspended time, and the recommended sentence was 730 days suspended in case No. 22CFO2288, and 200 days suspended in case No. 19CF01975. The trial court responded that it would make the proposed modifications. The abstract of judgment incorrectly shows that the trial court suspended 731 days of the sentence in case No. 22CF02288, and 83 days of the

Defendant appeals.

## II.  DISCUSSION

*A.*     *Due Process*

Defendant argues her sentence should be vacated and the matter remanded for resentencing because the trial court failed to order a "RANT assessment."[5]  In the

---

sentence in case No. 19CF01975.  The abstract of judgment must be corrected to reflect the sentence ultimately imposed.  (See *People v. Jones* (2012) 54 Cal.4th 1, 89 ["When an abstract of judgment does not reflect the actual sentence imposed in the trial judge's verbal pronouncement, this court has the inherent power to correct such clerical error on appeal, whether on our own motion or upon application of the parties"].)

[5] Neither party offers much explanation of the term "RANT assessment."  Defendant asserts "RANT assessments" are a "well-established tool for drug offenders to community correctional programs."  However, she offers scant authority for this proposition, and our own research has revealed only one unpublished, out-of-state case that so much as mentions "RANT assessments."  (See *State v. Lash* (Mar. 12, 2018, No. A17-0725) 2018 Minn. App. Unpub. LEXIS 187 [noting the defendant had been referred "to probation for a chemical-health assessment and for a 'RANT (Risk and Needs Triage)' "].)

  In the absence of any other authority, defendant refers us to something that appears to be a press release, which states, in part:  "The Risk and Needs Triage (RANT®) tool yields an immediate and easily understandable report that classifies offenders into one of four risk/needs quadrants, each with different implications for selecting suitable correctional decisions by judges, probation and parole officers, attorneys, and other decision-makers."  (Treatment Research Institute, RANT®:  An Evidence Based Supervision and Clinical Services Recommendation Solution, <https://www.innovatingjustice.org/sites/default/files/RANTSummaryVlavianos.pdf > [as of Feb. 26, 2024].)  She also provides a link to an abstract of a law review article describing the results of a more than 12-year old study in which "the Risk and Needs Triage (RANT)" was found to have "significantly predicted recidivism rates within 12 months of case disposition."  (Marlowe, et al., (2011) 39 Journal of Criminal Justice, pp. 253-260, as abstracted at U.S. Department of Justice, Office of Justice Programs, Targeting Dispositions for Drug-Involved Offenders, < https://www.ojp.gov/ncjrs/virtual-library/abstracts/targeting-dispositions-drug-involved-offenders-field-trial-risk-and> [as of Feb. 26, 2024).)  These authorities, such as they are, may make the marketing case for "RANT assessments," but they do not tell us how such an assessment would have changed the picture before the trial court.  What would a "RANT assessment" have told

5

absence of such an assessment, defendant says, the trial court had less than complete information about her circumstances and was unable to make an informed sentencing choice. From this premise, she reasons the trial court relied on faulty information in imposing the middle term sentence, and thereby violated her right to due process. Defendant's argument lacks merit.

"The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and, if so, under what conditions." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120; rule 4.414; see also *People v. Carmony* (2004) 33 Cal.4th 367, 377 ["a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].) Even so, due process requires that sentencing hearings be fundamentally fair. (*People v. Eckley* (2004) 123 Cal.App.4th 1072, 1080 ["Although not all the procedural safeguards required at trial also apply in a sentencing or probation hearing, such a hearing violates due process if it is fundamentally unfair"].) "Reliability of the information considered by the court is the key issue in determining fundamental fairness." (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754-755.) "A court's reliance, in its sentencing and probation decisions, on factually erroneous sentencing reports or other incorrect or unreliable information can constitute a denial of due process." (*Eckley, supra,* at p. 1080.)

Defendant does not argue anything in the original or supplemental probation reports was incorrect. Nor does she suggest the trial court relied on erroneous

---

the trial court that the original and supplemental probation reports did not? Defendant does not say.

Without knowing what a "RANT assessment" would ordinarily entail, we have difficulty saying the trial court erred in failing to order one. Nevertheless, we will assume for the sake of argument that "RANT assessments" are an accepted risk/assessment tool commonly used by the county probation department.

6

information in imposing the middle term. Instead, she argues the reports were unreliable due to the lack of a risk/needs assessment. Had such an assessment been ordered, she says, the trial court would have had more complete information about her status as a survivor of childhood sexual assault and would have been more likely to grant probation with treatment for substance abuse stemming from childhood trauma. There are several problems with defendant's argument.

First, as the People point out, the trial court ordered a risk/assessment in case No. 19CF01975 as part of the original probation report. True, the results of that assessment do not appear in the report. However, absent an affirmative record to the contrary, we must presume the probation officer conducted the assessment and considered the results in preparing the report. (See generally *People v. Hall* (2019) 39 Cal.App.5th 831, 839 [collecting cases]; and see Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].) Nothing in the record suggests the probation department failed to conduct the assessment as ordered or failed to account for defendant's circumstances in recommending a term of imprisonment followed by mandatory supervision in that case.

Second, though defendant observes " 'risk assessment tools are now more reliable than unstructured clinical judgment,' " (see *People v. Jenkins* (2023) 95 Cal.App.5th 142, 158 (Buchanan, J., conc.)) she does not provide any authority suggesting they are required, or their results required to be reported, for probation reports to be considered reliable. *In re J.C.* (2017) 13 Cal.App.5th 1201, on which defendant relies, does not support this position. There, another panel of this court considered an adjudicated ward's challenge to the juvenile court's commitment order. (*Id.* at p. 1203.) The court's opinion was partially published, and risk assessment tools were discussed in the unpublished portion. (*Ibid.*) As one of the court's introductory paragraphs explained: "In the unpublished portion of this opinion, we address J.C.'s challenges to his commitment based on the juvenile court's errors in committing him before obtaining a risk assessment, subsequently relying on an inapplicable risk assessment tool, and misstating his

7

maximum period of confinement." (*Ibid*.) We cannot rely on the unpublished portion of the *J.C.* court's opinion and cannot divine any meritorious argument from a single sentence in the published portion. Thus, to the extent defendant argues probation reports must reflect risk assessments or the results of risk assessments to be considered reliable, we are not persuaded.

Third, we note that neither the probation department nor any risk assessment tool needs necessarily to have been the last word on defendant's victim status or childhood trauma. A statement in mitigation is the proper vehicle to present additional facts to the court. (§ 1170, subd. (b)(4); *People v. Slater* (1989) 215 Cal.App.3d 872, 875.) Defendant could have presented a statement highlighting her circumstances, describing how they contributed to her substance abuse and criminal conduct, and explaining how probation and residential treatment would enable her to overcome them. Having failed to address these issues in a mitigation statement, defendant cannot be heard to complain that the trial court failed to give the same issues due consideration at the sentencing hearing.

Finally, it bears repeating that the trial court's imposition of the middle-term sentence was supported by several circumstances in aggravation, none of which have been challenged on appeal. Because even a single aggravating circumstance would have been sufficient to support imposition of the upper term (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1371), several unchallenged ones were sufficient to support the imposition of the middle term and denial of probation. Defendant's due process challenge to her sentence is rejected.

B.      *Implied Request for Continuance and Ineffective Assistance of Counsel*

Defendant argues the trial court erred in denying her implied request to continue the sentencing hearing so a "RANT assessment" could be done. The People respond, and we agree, that defendant forfeited the issue by failing to expressly make any such request in the trial court. (See *In re A.B.* (2014) 225 Cal.App.4th 1358, 1366 [argument that juvenile court abused discretion in denying continuance forfeited where mother never

8

requested continuance].) But even assuming the issue were properly before us, we would find no abuse of discretion.

Continuances in criminal cases may be granted only for good cause. (§ 1050, subd. (e).) We review the trial court's denial of a motion for a continuance for abuse of discretion. (*People v. Sakarias* (2000) 22 Cal.4th 596, 646.) " ' "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." ' " (*People v. D'Arcy* (2010) 48 Cal.4th 257, 287-288.) The party challenging the denial of a continuance bears the burden of establishing an abuse of discretion. (*People v. Beames* (2007) 40 Cal.4th 907, 920.)

"In reviewing the decision to deny a continuance, '[o]ne factor to consider is whether a continuance would be useful.' " (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.) Here, the trial court could reasonably conclude an open-ended continuance would not be useful, as the probation department had apparently already conducted a risk/needs assessment, and defendant had not been diligent in gathering and presenting evidence to support the claimed need for an additional assessment. (See *People v. Pride* (1992) 3 Cal.4th 195, 254 [proper for trial court to deny defendant's motion for a continuance prior to sentencing hearing to explore mental health issues when defendant had "ample opportunity" to do so earlier].) The trial court acted well within its broad discretion in denying the purported request for a continuance.

Defendant also raises a perfunctory claim of ineffective assistance of counsel. " 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.' " (*People v. Carter* (2005) 36 Cal.4th 1114, 1189.) We presume " 'counsel's

9

performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant . . . bears the burden of establishing constitutionally inadequate assistance of counsel.' " (*Ibid.*)

Defendant makes no meaningful attempt to carry her burden. She devotes only two sentences to her ineffective assistance of counsel claim, which do not appear under a separate heading or subheading (rule 8.204(a)(1)(B)), and do not demonstrate that trial counsel's performance fell below an objective standard of reasonableness or that any such performance prejudiced her as a result. The ineffective assistance claim is rejected.

C.      *Fines, Fees, and Assessments*

Finally, defendant challenges the imposition of various fines, fees, and assessments in both cases. Specifically, she challenges the imposition of the following fines, fees, and assessments in case No. 22CF02288: a $300 restitution fee (§ 1202.4, subd. (b)), a $300 mandatory supervision revocation fine (§ 1202.45, subd. (b)) (which was stayed), a $30 conviction assessment (Gov. Code, § 70373), and a $40 court operations assessment (§ 1465.8). She challenges the imposition of the following fines, fees, and assessments in case No. 19CF01975: a $300 restitution fine (§ 1202.4, subd. (b)), a $300 mandatory supervision revocation fine (1202.44), a $30 conviction assessment (Gov. Code, § 70373), a $40 court operations assessment (§ 1465.8), and a $350 drug court fee (§ 1203.1b). Defendant's challenge to the fines, fees, and assessments imposed in both cases lacks merit.

Relying principally on *People v. Duenas* (2019) 30 Cal.App.5th 1157, defendant argues the trial court violated her constitutional rights by imposing the foregoing fines, fees, and assessments without determining her ability to pay. However, defendant appeared for sentencing in June 2023, more than four years after the potential sea change brought about by *Duenas*. Although *Duenas* was well known by then, defendant neither objected to the imposition of any fine, fee, or assessment, nor requested an ability-to-pay

10

hearing.  Under the circumstances, we conclude her *Duenas* challenge has been forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 351.)

Anticipating forfeiture, defendant argues—again, in perfunctory fashion—that her trial counsel rendered ineffective assistance by failing to object to the imposition of the foregoing fines, fees, and assessments without determining her ability to pay.  As before, she makes no meaningful attempt to carry her burden of showing ineffective assistance of counsel.  The claim is rejected.

## III.  DISPOSITION

The trial court is directed to correct the abstract of judgment to correctly reflect that 730 days of the sentence were suspended in case No. 22CF02288, and 200 days of the sentence were suspended in case No. 19CF01975, and to forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.  The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

HULL, Acting P. J.

/S/

_____

MAURO, J.

11