Filed 9/22/25  In re G.A. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re G.A. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E085671 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J303013 & J303255) |
| v. | OPINION |
| D.L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

The juvenile court found true allegations pertaining to defendant and appellant D.L. (mother), removed minor G.A. (born December 2011) from mother's custody, and granted mother reunification services. As to minor M.K. (born May 2008), the court found the allegations true, took jurisdiction over M.K., and maintained him in mother's custody with family maintenance services.

On appeal, mother contends insufficient evidence supports the court's jurisdictional finding with respect to M.K. and, therefore, we must reverse the court's order of family maintenance services. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 4, 2024, personnel from plaintiff and respondent, San Bernardino County Children and Family Services (the department), received a referral alleging G.A. was a runaway. Police located G.A. at a friend's house. The friend's grandfather no longer wanted G.A. at the home. Upon returning home, G.A. and mother engaged in a verbal argument; mother refused to let G.A. back into the home. Mother stated she wanted the department to take G.A.

Mother reported that G.A.'s negative behaviors had escalated over the previous six months. She said G.A. had run away four to five times. Mother said G.A. was ditching school and failing all her classes. Mother "states that due to her being unable to handle [G.A.] because of her behavior, she can no longer have [G.A.] in the home." "Regarding . . . [M.K.] there are no identified safety threats for him."

2

The department filed a juvenile dependency petition alleging mother refused to provide for G.A. (b-1 & g-2). The court detained G.A. on December 9, 2024.

On the same date, the department filed an additional information for the court noting that it had re-examined its initial determination not to file a petition with respect to M.K. The department informed the court it would be filing a petition as to M.K. and recommending a disposition of family maintenance services.[1]

In the jurisdiction and disposition report filed January 3, 2025, the social worker recommended the court find the allegations true, remove G.A. from mother's custody, and provide mother reunification services. G.A. reported that she and mother had engaged in an altercation in which "mother pushed her and hit her in the chest." M.K. "attempted to protect the mother, and he was hitting [G.A.] at the request of the mother." G.A denied hitting mother or M.K.

On January 7, 2025, based on the same facts underlying its petition as to G.A., department personnel filed a juvenile dependency petition as to M.K. alleging mother refused to provide adequate care for G.A. placing M.K at similar risk of abuse (b-1), that M.K.'s father[2] should have known M.K was at risk of abuse or neglect if left in mother's care (b-2), that M.K.'s father's whereabouts were unknown (g-3), and that mother had failed to provide adequate care for G.A. (j-4).

At the detention hearing on January 8, 2025, the department asked that M.K.

---

[1] The department did not file the petition until January 7, 2025.

[2] Neither G.A.'s nor M.K.'s fathers are parties to the appeal.

remain in mother's custody. The court detained M.K. from the custody of her father; the court ordered M.K. to remain in mother's custody.

In the January 24, 2025, jurisdiction and disposition report as to M.K., the social worker requested additional time to interview and assess mother. The social worker had made repeated, unsuccessful attempts to interview mother.

In the January 28, 2025, additional information for the court, the social worker indicated she had spoken with mother: "The mother was . . . uncooperative throughout the conversation . . . . The mother stated that the Department was interested in treating her like a criminal." "The mother indicated that . . . [G.A.], has a history of stealing alcohol, credit cards, and running away, and the child welfare case was due to [G.A.] not wanting to be on punishment." "The mother reported that after . . . [G.A.] was brought . . . home by law enforcement a physical altercation between the mother and [G.A.] began."

"The mother reported that she contacted . . . law enforcement who came multiple times to address [G.A.] becoming aggressive and disrespectful. The mother reported after the last time law enforcement left the home, [G.A.] began to physically fight with the mother. The mother reported that the child attacked her and punched her in the face. The mother stated that she hit [G.A.] in order to protect herself from [G.A.'s] attack. The mother [denied] requesting . . . [M.K.] to engage in the physical altercation."

"The mother stated that she did not understand why she currently has an open case for [M.K.], as she was the one who reported the concerns for [G.A.]. [The social worker]

4

attempted to explain the Department's concerns, and the mother stated that the Department should not have concerns for [M.K.], and his safety is not at risk." "[M.K.] confirmed that he was not interested in speaking with the Department. [M.K.] stated that he was doing ok."

"The mother reported that she was not willing to allow the Department access to [M.K.]. The mother stated, 'I will go to jail to protect [him].'" "The mother denied wanting to engage in visitation with . . . [G.A.] and the mother denied wanting parental rights to . . . [G.A.]. The mother stated that she cares for her children, however, after . . . [G.A.] became physical with her, the mother was unable to protect the child at that point." The court ordered mother to allow the social worker and minor's attorney access to the family home and minor.

In a March 4, 2025, additional information for the court, the social worker noted the department had made several unsuccessful attempts to speak with mother and M.K. Mother had moved several times during the reporting period. On March 3, 2025, the social worker successfully contacted mother and M.K. The social worker "did not observe any visible marks or signs of abuse and neglect."

"The mother reported that she is willing to engage in services for the children, [M.K.] and [G.A.]. The mother stated that she is willing to work towards reunification with . . . [G.A.]." "[M]other currently has unstable housing, but she is willing to work with the Department to address this concern, and the concerns that [led] to . . . [G.A.] being removed from her home, as the mother is now interested in reunifying with [G.A.].

5

Therefore, the Department is recommending that . . . [M.K.], remain in the care of the mother . . . under Family [Maintenance]."

At the jurisdictional and dispositional hearing on March 4, 2025, mother objected to the allegations: "Mother does not agree that she failed to provide adequate care, supervision or protection for . . . [G.A.]. [¶] Mom indicates that she did not abandon nor failed to provide adequate provisions for the minor and is not in agreement with that allegation . . . . [S]o Mom believes she took steps to keep [G.A.] safe and . . . if Mom did not do something, such as reach out for help, [G.A.] would continue to possibly place herself in unsafe positions."

Minors' counsel noted that mother had repeatedly refused to cooperate with the department: "it was incredibly difficult just to get her to have [M.K.] present so the social workers or even my workers can interview and talk to him." Nonetheless, minors' counsel asserted that mother was now cooperating.

Minors' counsel argued that mother had refused to provide for G.A.: "For the longest time, Your Honor, Mom was also refusing to reunify with [G.A.]. All she wanted to do was focus on hers and [M.K.'s] relationship." "She did place [G.A.] in a very horrendous situation by refusing to take care of her."

The department argued that the court should find the allegations true: "Mother failed to provide adequate care for [G.A.], allowing her to stay at a friend's house for an unknown, unspecified period of time. Mother has great instability. She's provided about three or four addresses." "Mom has . . . been hostile, uncooperative with the Department

6

and consistently exacerbated the harm to her children by her negative comments and her unwillingness to make the changes she needs to make to be a safe and appropriate parent."

The court found all allegations with respect to both minors true. The court removed G.A. from mother's custody and ordered reunification services for mother. As to M.K., the court ordered that he be declared a dependent of the court and maintained in mother's custody with family maintenance services "under the supervision of the court."

## II.  DISCUSSION

Mother contends that insufficient evidence supports the jurisdictional finding as to her with respect to M.K. and, therefore, we should reverse the court's dispositional order as well. We affirm.

### A.     *Justiciability*

"'[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent. [Citations.]'" (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161; accord, *In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).)  "As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979; accord, *In re M.R.* (2017) 7 Cal.App.5th 886, 896; *D.P.*, at p. 283 ["[W]here jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot. [Citation.]"].)

7

As here, where mother does not challenge the jurisdictional findings as to father, "'any decision we might render on the allegation[] involving [mother] will not result in a reversal of the court's order asserting jurisdiction.  The juvenile court will still be entitled to assert jurisdiction over the minor on the basis of the unchallenged allegations.  Further, the court will still be permitted to exercise personal jurisdiction over [mother] and adjudicate [her] parental rights, if any, since that jurisdiction is derivative of the court's jurisdiction over the minor and is unrelated to [mother's] role in creating the conditions justifying the court's assertion of dependency jurisdiction.'" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308 (*Briana V.*).)

"In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*Briana V.*, *supra*, 236 Cal.App.4th at p. 311; accord, *In re S.F.* (2023) 91 Cal.App.5th 696, 719-720; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492, overruled in part on another ground in *D.P.*, *supra*, 14 Cal.5th 266, ["A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established."].)

"Courts may consider whether the challenged jurisdictional finding 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or '"could have other consequences for [the appellant], beyond jurisdiction."' [Citations.]" (*D.P.*, *supra*, 14 Cal.5th at p. 285 [Father's contention that the jurisdictional finding *could* result in his inclusion on a child abuse index was "too

8

speculative . . . ."].)

"The exercise of discretionary review may also be informed by whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct. [Citations.] Though stigma alone will not sustain an appeal, a court may consider the nature of the allegations against the parent when deciding whether discretionary review is proper. The more egregious the findings against the parent, the greater the parent's interest in challenging such findings." (*D.P.*, *supra*, 14 Cal.5th at pp. 285-286.)

"Where . . . one parent appealed and not the other, but the findings against the parent who has appealed are based on more serious conduct, it may serve the interest of justice to review the parent's appeal. The same may be true where a parent does not challenge all jurisdictional findings, but only one finding involving particularly severe conduct." (*D.P.*, *supra*, 14 Cal.5th at p. 286.)

"The factors above are not exhaustive, and no single factor is necessarily dispositive of whether a court should exercise discretionary review . . . . Ultimately, in deciding whether to exercise its discretion, a court should be guided by the overarching goals of the dependency system: 'to provide maximum safety and protection for children' with a 'focus' on 'the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child.' [Citations.]" (*D.P.*, *supra*, 14 Cal.5th at p. 286.) "[C]onsideration of the overarching purposes of the dependency system may counsel in favor of reviewing a parent's appeal . . . . A reviewing court must decide on a case-by-case basis whether it is appropriate to exercise

discretionary review to reach the merits . . . , keeping in mind the broad principles and nonexhaustive factors discussed above." (*Id*. at p. 287.)

Here, mother has failed to address the justiciability issue at all. Mother does not challenge the jurisdictional findings against father. Mother "has not demonstrated a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings." (*D.P.*, *supra*, 14 Cal.5th at p. 273.) Mother has not demonstrated that the jurisdictional findings have affected her custody rights or curtailed her contact with M.K. (*Id.* at pp. 278-282.) In fact, mother retained custody of M.K; thus, her custody rights and contact with M.K have not been curtailed.

Mother has not identified any stigma she faces nor demonstrated that she has suffered from a change in legal status due to the jurisdictional finding. (*D.P.*, *supra*, 14 Cal.5th at p. 277.) Mother has not shown that the dispositional order adversely affects her. (*Ibid*.)

Moreover, even if we found that insufficient evidence supported the court's order sustaining the allegations against mother, the juvenile court would still have jurisdiction over M.K.; it would also have jurisdiction to enter the dispositional order requiring mother to participate in family maintenance services. (*D.P.*, *supra*, 14 Cal.5th at p. 283; *Briana V.*, *supra*, 236 Cal.App.4th at p. 308.) Mother fails to identify any other potential basis for us to exercise our discretion to address her claim, such as any prejudicial effect or any consequences beyond jurisdiction. (*D.P.*, at p. 285.)

Mother fails to support her bare challenge to the court's order of family

10

maintenance services with legal argument.  (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 ["When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary.  [Citations.]"]; accord *People* v. *Earp* (1999) 20 Cal.4th 826, 884.)  Therefore, we decline to exercise our discretion to review whether sufficient evidence supported the court's order sustaining the allegations against mother as to M.K.

B.      *Sufficiency of the Evidence*

Even assuming we exercised our discretion to review the court's order sustaining the allegations against mother as to M.K., we would hold that sufficient evidence supported it.

"Generally, to acquire jurisdiction under subdivision (b) of section 300, the juvenile court [is] obliged to find that the child 'has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result' of specified forms of parental neglect, including . . . failure to protect the child.  (§ 300, subd. (b).)"  (*In re L.O.* (2021) 67 Cal.App.5th 227, 237 (*L.O.*).)

"'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child.' [Citation.]"  (*L.O.*, *supra*, 67 Cal.App.5th at p. 238.)  "Although there must be a present risk of harm to the minor, the juvenile court may consider past events to determine whether the child is presently in need of juvenile court protection"  (*In re A.F.* (2016) 3 Cal.App.5th 283, 289.].)  "[T]he applicable standard of proof for the court to determine whether a child comes within the

jurisdiction of the juvenile court pursuant to a dependency petition is preponderance of the evidence, . . . ." (*In re Joshuia S.* (1988) 205 Cal.App.3d 119, 123; accord, *In re A.B.* (2014) 225 Cal.App.4th 1358, 1363.)

"'""In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. 'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.'"' [Citations.]" (*L.O.*, *supra*, 67 Cal.App.5th at p. 238.)

Here, sufficient evidence supported the court's assumption of jurisdiction over M.K. Mother repeatedly, effectually abandoned G.A. G.A. was staying at a friend's house for an unknown amount of time. Mother later refused to let G.A. back into the home and said she wanted the department to take G.A. Mother later told the social worker she did not want to visit G.A. and no longer wanted parental rights to her.

G.A. reported that mother "pushed her and hit her in the chest," which mother admitted. G.A. also said that M.K. hit her at mother's request. Mother repeatedly prevented the department from having access to M.K. so the department could ensure his safety. The court had to order mother to allow the social worker and minor's attorney

12

access to the family home and M.K.

Thus, there was evidence that mother posed a substantial risk of abandoning M.K., hiding M.K. from the department, and/or involving M.K. in physical assaults. Substantial evidence supported the court's order bringing M.K. under its jurisdiction.

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                                    J.

We concur:

RAMIREZ
                    P. J.

CODRINGTON
                    J.